

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA**

| | |
|---|---|
| **DEBORAH GAIL ELLIS, On Behalf of Herself and All Others Similarly Situated,** ) ) | |
| ) | Civil Action No.:  1:04-CV-80-3 |
| **Plaintiff** ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **PHOEBE PUTNEY HEALTH SYSTEMS, INC.; PHOEBE PUTNEY MEMORIAL HOSPITAL, INC.; and JOHN DOES 1 THROUGH 10.** ) ) ) ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## CLASS ACTION COMPLAINT
### (JURY TRIAL DEMANDED)

The Plaintiff Deborah Gail Ellis files this Class Action Complaint seeking monetary damages, injunctive and other equitable relief against the Defendants and alleges the following:

### I.
### INTRODUCTION

Defendants Phoebe Putney Health System, Inc. and Phoebe Putney Memorial Hospital, Inc. ("the Phoebe Putney Defendants") have operated free from federal and state taxes because they promised the government that they would operate as a charity provider of health care for the uninsured and that it would not engage in business "directly or indirectly, for the benefit of private interests." In reality, the Phoebe Putney Defendants do just the opposite: they charge their uninsured patients significantly more than those who have means, generally pursuing the poor or uninsured relentlessly by aggressive and humiliating collection techniques, and through physicians whose for-profit businesses are formed and subsidized by the "tax-free" organization,



are rampantly violating the federal and state prohibition against profiteering by "private interests."

The Phoebe Putney Defendants and their "nonprofit" confederates across the country who employ the same business model have thereby amassed and hoarded billions of dollars in cash and marketable securities, which otherwise should be available to provide charity care to those who were contemplated by the tax exemption. Moreover, enormous property and revenues have been isolated from taxation, the effect of which has bestowed upon the Phoebe Putney Defendants and their confederates greater liquidity than that possessed by most state and local governments. This Complaint asks the Court to certify a Class of the intended beneficiaries of the Phoebe Putney Defendants' commitment to the government, more fully defined below, and to require the Phoebe Putney Defendants to honor the commitments for which they have received their unique freedom from taxation.

The Phoebe Putney Defendants, an Albany based healthcare provider, tell their patients that they operate a charitable hospital on a nonprofit basis. In truth, the Phoebe Putney Defendants operate one of the most "profitable" hospitals in Georgia, with net assets of over $300 million dollars. This profit was accumulated because the Phoebe Putney Defendants have enjoyed tax exemptions as "nonprofit" charitable institutions, while charging their patients anything but charitable rates.

Despite its surplus revenues and substantial federal, state, and local tax exemptions, the Phoebe Putney Defendants have engaged in the pattern and practice of charging inordinate and inflated rates for medical care to the Plaintiff and the Class, who are uninsured Phoebe Putney patients. The Phoebe Putney Defendants charge the Plaintiff and the Class significantly more for medical services than they charge their insured patients for the same services. They also utilize

aggressive, abusive and humiliating collection practices to recover these inflated medical debts from the Plaintiff and the Class.

Such charging and collection practices violate the Phoebe Putney Defendants' agreements with the United States Government, the State of Georgia and local governments to provide mutually affordable medical care to the Plaintiff and the Class in return for substantial federal, state and local tax exemptions. Moreover, the Phoebe Putney Defendants have breached their duty of good faith and fair dealing toward the Plaintiff and the Class. The Phoebe Putney Defendants' abusive, discriminatory and unfair conduct toward the Plaintiff and the Class is also in violation of Georgia's Uniform Deceptive Trade Practices Act and Fair Business Practice Act. The Phoebe Putney Defendants have been unjustly enriched at the Plaintiff's and Class' expense, warranting the imposition of a constructive trust on its wrongfully obtained tax savings, assets, and profits.

## II.
## UNINSURANCE IN GEORIGA

1.

According to a recent study, 82 million people – nearly one third of the United States population younger than 65 – lacked health insurance at some point over the last two years. Uninsurance is a problem for many citizens in Georgia. About 1,260,700 Georgians do not have health insurance. This is about 17 percent of Georgia's population.

2.

For most uninsured Georgians, at least one person in the family works either full-time or part-time. Many have family members who work full-time all year.

3.

Because the Medicare program provides health insurance for most people age 65 and over, the uninsured are almost entirely under the age of 65.  The largest number of uninsured are those aged 30-49, but the rate of uninsurance is highest for young adults, aged 19-29.

4.

The uninsured are disproportionately racial and ethnic minorities.

5.

Employer-based coverage is often unavailable or unaffordable.  Uninsured people who have jobs may face one or more of the following barriers:

- Smaller employers are less likely to offer health insurance to their employees, because premiums are prohibitively expensive.
- Service and labor jobs are less likely to provide workers with health insurance.
- Part-time workers are often not eligible for insurance.
- Even when employers offer health insurance to low-wage workers, the premiums tend to be higher than for higher-paid workers. Low-wage workers have a harder time affording these premiums, and are more likely to remain uninsured.

6.

People who lose their jobs often lose their health insurance.

7.

Some workers who lose their jobs may be eligible to keep their health insurance through COBRA.  To obtain COBRA coverage, workers must pay the entire cost of the premium. Premiums are expensive, and newly unemployed workers have generally had their incomes dramatically reduced.

8.

Buying coverage in the private individual market is often prohibitively expensive.  In 2002, a typical standard individual health insurance policy in Georgia cost $1,104 per year for a healthy 25-year-old woman and $2,424 per year for a healthy 55-year-old woman.  A healthy single woman with earnings equal to the poverty level of $8,980 per year would have to spend about 10 to 30 percent of her entire income on health insurance to buy such a policy.

9.

People with any sort of health problem or risk factor, from hay fever to HIV, must pay significantly more for private insurance, or may not be able to obtain insurance at all.

10.

The health care safety net leaves many people uncovered, especially adults.  Many low-income people, especially adults, cannot qualify for health insurance through safety net programs like Medicaid. More than 80 percent of all uninsured adults nationwide with incomes below 200 percent of the federal poverty level are ineligible for Medicaid and other public health insurance programs.

11.

In Georgia, working parents earn too much to qualify for Medicaid if their income is over approximately 59 percent of the federal poverty level for a family of three.

## III.
## PARTIES

12.

Plaintiff Deborah Gail Ellis is an adult resident citizen of Albany, Georgia, residing at 201 Ebony Lane, Albany, Georgia 31701.

13.

Defendants Phoebe Putney Health System, Inc. and Phoebe Putney Memorial Hospital, Inc. are Georgia not-for-profit corporations with their principal place of business in Albany, Georgia.  Both Phoebe Putney Health System, Inc. and Phoebe Putney Memorial Hospital, Inc. may be served with process through its registered agent, Joel Wernick, 417 Third Avenue, Albany, Georgia 31701.

14.

The various Defendants, designated John Does 1 through 10, are, based upon information and belief, certain unknown and unnamed persons and/or entities who may be liable for the claims asserted herein, who include but are not limited to agents, servants, employees, representatives, affiliates, parents, subsidiaries, joint tortfeasors, tortfeasors, contractors, co-conspirators, joint adventures, partners, stockholders, and any other person or entitled of the named Defendants and/or any other persons who may be liable to the Plaintiff for the claims asserted herein.

**IV.**
**JURISDICTION AND VENUE**

15.

This Court has jurisdiction over the subject matter of this controversy pursuant to 28 U.S.C. §1331 and 1367, because Plaintiff's claims arise out of a federal contract between the Phoebe Putney Defendants and the United States Government in which the Phoebe Putney Defendants agreed to provide mutually affordable medical care to its uninsured  patients  in exchange for a tax exempt status under 26 U.S.C. §501(c)(3).  This Court also has subject matter jurisdiction of this controversy under 42 U.S.C. §1395 dd because the Phoebe Putney Defendants

failed to provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such emergency medical care. This Court further has subject matter jurisdiction of this controversy under 28 U.S.C. §1340 because Plaintiff's claims arise out of the Phoebe Putney Defendants' duties and obligations under 26 U.S.C. §501(c)(3).

16.

Venue in this district is proper pursuant to 28 U.S.C. §1391(b).

**V.**
**FACTS**

17.

The Phoebe Putney Defendants represent themselves as an Albany based, tax exempt, charitable, nonprofit hospital system.

18.

Phoebe Putney Memorial Hospital is the largest healthcare provider in Southwest Georgia. The Phoebe Putney Defendants control the highest market share of medical care in a region of 26 counties located in Southwest Georgia.

19.

The Phoebe Putney Defendants operate one of the most financially lucrative hospitals in Georgia. For example, in their Form 990 for the fiscal year ending July 31, 2002, the Phoebe Putney Defendants together reported having cash and marketable securities valued at $216,610,656.00 and real property, buildings and equipment valued at the historical cost of $327,489,513.00. The Phoebe Putney Defendants together reported net assets of $296,270,472.00 on their Form 990 filed with the Internal Revenue Service as of July 31, 2002. In the independent auditor's report for Phoebe Putney Health System, Inc. and related entities as

31, 2003, net assets are listed as $327,172,645.00.  Defendant Phoebe Putney Health Systems has also filed a form 5471, Information Return for U.S. Persons With Respect To Certain Foreign Corporations for Grove Pointe Indemnity SPC located in an off-shore account in the Grand Cayman Islands.  As of July 31, 2002, Grove Pointe had cash of $5,691,019.99.  The Phoebe Putney Defendants' net assets exceed 300 million dollars.

20.

The Phoebe Putney Defendants entered into express and/or implied Agreements with the United States Government, the State of Georgia and local governments to provide mutually affordable medical care to all of its patients in return for substantial tax exemptions.  An express and/or implied contractual relationship was thereby created between The Phoebe Putney Defendants and the United States Government, the State of Georgia and local governments to accomplish such purpose.  The Phoebe Putney Defendants' uninsured  patients were the express and/or implied intended third party beneficiaries of such Agreements.

21.

The Phoebe Putney Defendants have applied for and received a federal income tax exemption as purported "charitable" institutions under 26 U.S.C. §501(c)(3).  Under §501(c)(3), the Phoebe Putney Defendants are required to operate "exclusively"  in furtherance of a charitable purpose, with no part of its operations attributable directly or indirectly to any noncharitable commercial purpose.  By accepting this favorable tax exemption, the Phoebe Putney Defendants explicitly and/or implicitly agreed: to provide an emergency room open to all of its uninsured  patients without regard to their ability to pay for such care; to provide mutually affordable medical care to all of its patients;  to charge its uninsured  patients only a reasonable cost for medical care; not to charge its uninsured  patients the highest and full undiscounted cost

-8-

for medical care; not to charge its uninsured patients a higher rate for medical care than its insured patients; to use its net assets and revenues to provide mutually affordable medical care to its uninsured patients; and not to pursue outstanding medical debt from its uninsured patients through humiliating collection efforts, lawsuits, liens and garnishments.

22.

Under Georgia law's definitions for tax exemption purposes, "nonprofit hospitals . . . mean such institutions or hospitals which may have incidental income from paying patients, when the income, if any, is devoted exclusively to the charitable purpose of caring for patients who are unable to pay and to maintaining, operating, and improving the facilities of such institutions and hospitals, and when the income is directly or indirectly for distribution to shareholders in corporations owing such property or to other owners of such property." O.C.G.A. §48-5-40(5). The Phoebe Putney Defendants have applied for and received state and local income, property and sales tax exemptions from the State of Georgia and local governments. By accepting these favorable state and local tax exemptions, the Phoebe Putney Defendants explicitly and/or implicitly agreed: to provide mutually affordable medical care to all of its patients; to charge its uninsured patients only a reasonable cost for medical care; not to charge its uninsured patients the highest and full undiscounted cost of medical care; not to charge its uninsured patients a higher rate for medical care than its insured patients; to use its net assets and revenues to provide mutually affordable medical care to its uninsured patients; and not to pursue outstanding medical debt from its uninsured patients through humiliating collection efforts, lawsuits, liens and garnishments.

23.

Despite its favorable tax exempt status and its substantial net revenues and asset reserves in the hundreds of millions of dollars, the Phoebe Putney Defendants have breached their Agreements with the United States Government, the State of Georgia and local governments by: failing to provide emergency room medical care to its uninsured patients without regard to their ability to pay for such care; charging its uninsured patients the highest and full undiscounted cost for medical care at grossly inflated rates from the actual cost of providing such services; providing discounted medical care to entities connected to or affiliated with their Board of Directors; allowing noncharitable for-profit physician groups and service providers to derive profit from their tax-exempt hospitals; and by engaging in aggressive efforts to collect undiscounted medical debt from its uninsured patients through abusive, harassing, and humiliating collection lawsuits, liens, and garnishments.  The Phoebe Putney Defendants' uninsured patients have therefore not received the benefit of the Agreements between the Phoebe Putney Defendants and the United States Government, the State of Georgia, and local governments.  These uninsured patients primarily consist of the working class who do not qualify for Medicaid but cannot afford private health insurance and/or cannot obtain health insurance coverage through their employers.

24.

The Phoebe Putney Defendants set their charges for medical services at highly inflated rates that bear no connection to the actual cost of providing the service.  While the Phoebe Putney Defendants give private insurance companies and governmental third party payors like Medicare and Medicaid discounts off this gross or "sticker price," their uninsured patients are charged 100% of the full sticker price, or at least substantially more than the Medicare rate.

-10-

25.

The Phoebe Putney Defendants provide substantial discounts for noncharitable private insurers. These discounts violate 26 U.S.C. §501(c)(3)'s prohibition against operating directly or indirectly for non-charitable commercial purposes.

26.

The Phoebe Putney Defendants realize substantial revenues from this discriminatory charging practice.

27.

Despite sizeable net revenues and its asset reserves in the hundreds of millions of dollars, the Phoebe Putney Defendants provide little charity care to their uninsured patients. The Phoebe Putney Defendants have never provided an amount of uncompensated care equal to their market share. The Phoebe Putney Defendants' level of charity care constitutes only a small amount of their gross charges.

28.

Before the Phoebe Putney Defendants admit any patient, including its uninsured patients, into its hospitals and/or emergency rooms for emergency medical care, they require their patients to sign a form contract promising to pay the Phoebe Putney Defendants in full for unspecified and undocumented charges for medical care that are set by the Phoebe Putney Defendants in their sole discretion. The Phoebe Putney Defendants will not admit a patient into their emergency rooms for emergency medical care unless that patient agrees to pay Phoebe Putney in full for such unspecified and undiscounted charges.

29.

Not only do the Phoebe Putney Defendants charge their uninsured  patients the highest rates for medical care, which they cannot afford to pay, they have also engaged in the uniform pattern and practice of aggressively pursuing such debt through abusive, humiliating, and harassing collection efforts, such as collection lawsuits, liens, and garnishments.  Such lawsuits have driven many Phoebe Putney patients to bankruptcy and/or financial ruin.

30.

While the Phoebe Putney Defendants charge their uninsured patients the full undiscounted amounts for medical care, upon information and belief, they provide substantial discounts off the gross charges to entities owned, controlled or connected to their Board of Directors.  These discounts violate the Phoebe Putney Defendants' obligations under 26 U.S.C. §501(c)(3).

31.

The Phoebe Putney Defendants also allow noncharitable "for profit" entities such as physician groups and service providers to use their tax-exempt hospitals to derive profits.  These for-profit physician groups and service providers practice in the Phoebe Putney Defendants' hospitals and then bill patients for work done at these tax-exempt hospitals.  These for-profit physician groups and service providers are noncharitable entities which do not have a charitable mission or purpose.  By allowing noncharitable for-profit entities with the charitable mission to derive a profit from its tax-exempt hospitals, the Phoebe Putney Defendants have not operated actually and exclusively for charitable purposes in violations of its obligations under  26 U.S.C. §501(c)(3).  This conduct violates §501(c)(3)'s requirement that a hospital operate exclusively for charitable purposes.

32.

The American Hospital Association ("AHA"), the self-proclaimed representative of the

Phoebe Putney Defendants and the nonprofit hospital industry, provides substantial assistance

and guidance to the Phoebe Putney Defendants and the nonprofit hospital industry on their

billing and collection practices for uninsured patients.  The AHA has conspired with and aided

and abetted the Phoebe Putney Defendants with their billing and collection practices described

above.

33.

The AHA also falsely justifies such billing and collection practices to government

entities.  On December 16, 2003, AHA sent a letter to the United States Department of Health

and Human Services Secretary Tommy Thompson in which it concealed and misrepresented the

Phoebe Putney Defendants' and other nonprofit hospitals' billing and collection practices.

Specifically, the AHA, while admitting that the Phoebe Putney Defendants and its nonprofit

hospital members charge its uninsured patients the full price for medical care, falsely represented

to the Secretary that the Phoebe Putney Defendants and its member nonprofit hospitals were

required by the federal Medicare regulations to charge and aggressively collect such grossly

inflated medical expenses.  On February 19, 2001, Secretary Thompson exposed the falsity of

Defendant AHA's representations, stating that the Medicare regulations have never required

nonprofit hospitals to charge its uninsured patients the full price for medical care.

34.

Despite the Phoebe Putney Defendants' conduct as described above, the AHA has

awarded Phoebe Putney Memorial Hospital with the Foster G. McGraw Prize for excellence in

community service.  In the press release for this award, the Phoebe Putney Defendants claimed

that their "founding mission guarantees care to all, regardless of ability to pay." The abusive actions of the Phoebe Putney Defendants against the poor working class of uninsured patients belie their public proclamations of charity care "to all, regardless of ability to pay."

## VI.
## PLAINTIFF

35.

Plaintiff Deborah Gail Ellis had no health insurance coverage. She works full-time, however, her employer does not provide health insurance and she cannot afford to purchase coverage. She is the head of her household and supports her teenage son.

36.

She was briefly admitted to Phoebe Putney Memorial Hospital for symptoms relating to her congestive heart failure and hypertension. As a condition of her treatment, she was required to sign forms upon admission which guaranteed payment of unspecified and undiscounted medical charges. At the time of her treatment, she was earning approximately 5-6 dollars per hour as a telephone operator for a business which answers phones after hours.

37.

After her discharge, Phoebe Putney Memorial Hospital sent her numerous collection notices and repeatedly called her home. Phoebe Putney Memorial Hospital filed suit against her for the amount of $3,008.00 and obtained a judgment against her on or about December 12, 2003. Ms. Ellis could not afford to hire an attorney to defend her. Using that judgment, Phoebe Putney Memorial Hospital has garnished her modest wages. Ms. Ellis has continued to be barraged by collection notices from the Phoebe Putney Defendants for other amounts not included in the judgment.

38.

Ms. Ellis also visited the Phoebe Putney Memorial Hospital Emergency Room on or about June 21, 2003.  As a condition of treatment she was required to sign contract forms which guaranteed payment of unspecified and undiscounted charges.

39.

For this visit, the Hospital charged Ms. Ellis full undiscounted rates which significantly exceeded rates charged for insured patients or patients with Medicaid or Medicare coverage. The Hospital has aggressively attempted to collect these charges from Ms. Ellis through repetitive letters, collection notices, phone calls, and threats of litigation.

40.

Ms. Ellis also visited the Phoebe Putney Memorial Hospital Emergency Room in May 2004 with symptoms of abdominal pain.  As a condition of treatment, the Hospital again required her to sign contract forms which guaranteed payment of unspecified and undiscounted charges.

41.

For this emergency room visit, Phoebe Putney Memorial Hospital charged Ms. Ellis full undiscounted gross rates which significantly exceeded rates charged to insured patients or patients with Medicaid or Medicare coverage.  The Phoebe Putney Defendants have aggressively attempted to collect such undiscounted charges from Ms. Ellis.

42.

The Phoebe Putney Defendants' actions have caused Ms. Ellis economic damages.

## VII.
## CLASS ACTION ALLEGATIONS

43.

Plaintiff brings this class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of a Class consisting of all uninsured patients of Phoebe Putney Heath System, Inc. and Phoebe Putney Memorial Hospital, Inc., who were charged an amount for medical care in excess of the amount charged to Defendants' Medicare patients, and/or were pursued for such debt through collection efforts and lawsuits.

44.

The rates charged by the Phoebe Putney Defendants to Mrs. Ellis significantly exceeded the discounted rates charged by the Phoebe Putney Defendants for insured patients or patients with Medicaid or Medicare coverage.  The rates charged by the Phoebe Putney Defendants to Mrs. Ellis bear no relation to the actual cost of the medical care.

45.

Plaintiff is a member of the Class she seeks to represent.

46.

The Class consists of thousands of individuals and therefore is so numerous that joinder is impracticable.

47.

Plaintiff's claims are typical of the claims of the Class because they and all of the Class sustained damages as a result of the Phoebe Putney Defendants' unfair and discriminatory charging and/or collection practices seeking the full undiscounted cost of medical care.

-16-

48.

There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a)     whether the Phoebe Putney Defendants entered into express and/or implied Agreements with the United States Government, the State of Georgia, and local governments that in return for substantial tax exemptions, they would: operate exclusively for charitable purposes; provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care; provide mutually affordable medical care to the Plaintiff and the Class; and not to seek to collect outstanding medical debt from the Plaintiff and the Class through aggressive, abusive, and humiliating collection practices;

(b)     whether the Phoebe Putney Defendants breached said Agreements with the U.S. Government, State of Georgia, and local governments by: failing  to operate exclusively for charitable purposes; failing to provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care; failing to provide mutually affordable medical care to the Plaintiff and the Class; providing discounted medical care to entities connected to or affiliated with their Board of Directors; allowing charitable "for profit" physician groups and service providers to derive profit from their tax exempt hospital;

and by seeking to collect outstanding undiscounted medical debt from the Plaintiff and the Class through aggressive, abusive, and humiliating collection practices;

(c)     whether the Plaintiff and the Class are express and/or implied intended third party beneficiaries to said Agreements between the Phoebe Putney Defendants and the United States Government, the State of Georgia, and local governments;

(d)     whether the Phoebe Putney Defendants charged the Plaintiff and the Class the full undiscounted cost of medical care in violation of its charitable, nonprofit, tax exempt status;

(e)     whether the Phoebe Putney Defendants charged the Plaintiff and the Class higher amounts for medical care than their insured patients in violation of its charitable,  nonprofit, tax exempt status;

(f)     whether the Phoebe Putney Defendants profited by charging the Plaintiff and the Class the highest rates for medical care;

(g)     whether the Phoebe Putney Defendants billed the Plaintiff and the Class unreasonable charges for medical care;

(h)     whether the Phoebe Putney Defendants failed to provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care in violation of 26 U.S.C. §501(c)(3) and 42 U.S.C. §1395 dd;

(i)     whether the Phoebe Putney Defendants conditioned emergency room medical screening and/or treatment to the Plaintiff and the Class on their

ability to pay or financial guarantees to pay for such medical care in violation of 26 U.S.C. §501(c)(3) and 42 U.S.C. §1395 dd;

(j)    whether the Phoebe Putney Defendants should have utilized their sizable financial resources to provide a greater amount of mutually affordable medical care to the Plaintiff and the Class pursuant to its charitable, nonprofit, tax exempt status;

(k)    whether the Phoebe Putney Defendants have utilized aggressive, unfair, abusive, and harassing collection practices, lawsuits, liens, and garnishments to collect medical payments from the Plaintiff and the Class in violation of their charitable, nonprofit, tax exempt status;

(l)    whether the Phoebe Putney Defendants violated the anti-inurement provision under 26 U.S.C. §501 (c)(3) by providing discounts in medical care to entities connected to their Board of Directors;

(m)    whether the Phoebe Putney Defendants violated 26 U.S.C. §501 (c)(3) by providing substantial discounts for noncharitable private insurers;

(n)    whether the Phoebe Putney Defendants failed to operate exclusively for charitable purposes by allowing noncharitable for-profit entities to derive a profit from its use of its tax-exempt hospitals in violation of 26 U.S.C. §501(c)(3).

(o)    whether the Phoebe Putney Defendants breached their duty of good faith and fair dealing to the Plaintiff and the Class;

(p)    whether a charitable trust was created for the benefit of the Plaintiff and the Class;

-19-

(q)    whether the Phoebe Putney Defendants' actions as alleged in the Complaint violated Georgia's Fair Business Practices Act and Uniform Deceptive Trade Practices Act;

(r)    whether the Phoebe Putney Defendants have been unjustly enriched at the Plaintiff's and the Class' expense;

(s)    whether the AHA conspired with the Phoebe Putney Defendants to breach their contracts with the United States government, State of Georgia, and local governments;

(t)    whether the AHA aided and abetted the Phoebe Putney Defendants in breaching their contracts with the United States government, State of Georgia, and local governments;

(u)    whether the Phoebe Putney Defendants should be enjoined from continuing their unfair, discriminatory, and abusive conduct; and

(v)    whether Defendants are liable to the Plaintiff and the Class in this action, as alleged in the Complaint.

49.

All common questions are able to be resolved through the same factual occurrences as specifically and/or generally alleged herein.

50.

Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff has no claims antagonistic to those of the Class.  Plaintiff has retained competent and experienced counsel in complex class actions, and mass tort and products liability litigation.  Counsel is committed to the vigorous prosecution of this action.

-20-

51.

The prosecution of separate actions by the Plaintiff and individual members of the Class against the Defendants would create a risk of inconsistent or varying adjudications on the common issues of law and fact related to this action.

52.

A Class Action is superior to all other available methods for the fair and efficient adjudication of this controversy.

53.

The expense and burden of litigation would substantially impair the ability of the Class Members to pursue individual cases in order to initiate their rights.  In the absence of a class action, the Defendants will retain the benefits of their wrongdoing.

54.

Class certification pursuant to Rule 23(b)(3) is appropriate because the common issues of fact and law alleged herein are common to the Class and predominate over any questions affecting only individual members, thereby rendering the class action superior to all other available methods for the fair and efficient adjudication of this controversy.

55.

Class certification is also appropriate pursuant to Rule 23(b)(2) because, as set forth in the Complaint, the Phoebe Putney Defendants have acted and/or refused to act on grounds generally applicable to the Plaintiff and the Class, thereby warranting appropriate injunctive and/or declaratory relief.

## VIII.
## CAUSES OF ACTION

### COUNT ONE
### THIRD PARTY BREACH OF CONTRACT

56.

Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 55 of the Complaint.

57.

The Phoebe Putney Defendants, as a purported charitable entity under U.S.C. §501(c)(3), entered into an express and/or implied Agreement with the United States Government pursuant to U.S.C. §501(c)(3) that in return for a substantial federal income tax exemption valued in the millions of dollars it would: operate exclusively for charitable purposes; provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care; provide mutually affordable medical care to the Plaintiff and the Class; and not to pursue outstanding medical debt from the Plaintiff and the Class by engaging in aggressive, abusive, and humiliating collection practices; and not provide financial inurement to private individuals and entities.

58.

The Phoebe Putney Defendants, as a purported institution of public charity, also entered into express and/or implied Agreements with the State of Georgia and local governments that in return for substantial state income, property, and sales tax exemptions valued in the millions of dollars, it would:  operate exclusively for charitable purposes; provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care; provide mutually affordable medical care to the Plaintiff and the Class; and not to pursue

-22-

outstanding medical debt from the Plaintiff and the Class by engaging in aggressive, abusive, and humiliating collection practices; and not provide financial inurement to private individuals and entities.

59.

The Plaintiff and the Class are the express and/or implied intended third party beneficiaries of the Phoebe Putney Defendants' Agreements with the United States Government, the State of Georgia and local governments.

60.

The Phoebe Putney Defendants breached the above-mentioned Agreements with the United States Government, the State of Georgia, and local governments by: failing to provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care; charging the Plaintiff and the Class the highest and full undiscounted cost of medical care; charging the Plaintiff and the Class more than its insured patients for the same medical services; failing to use its net assets and revenues in the hundreds of millions of dollars to provide mutually affordable medical care to the Plaintiff and the Class; utilizing aggressive, abusive and humiliating collection practices such as lawsuits, liens, and garnishments to collect such inflated and unreasonable medical debt from the Plaintiff and the Class; providing discounts off the gross charges to entities connected to or affiliated with its Board of Directors; and allowing noncharitable for-profit entities to derive a profit from use of its tax-exempt hospital. As a result of such conduct, the Plaintiff and the Class have not received the benefit of the Phoebe Putney Defendants' Agreements with the United States Government, the State of Georgia, and local governments. Such conduct is also contrary to the Phoebe Putney Defendants' purported charitable purpose and its nonprofit status.

-23-

## COUNT TWO
## BREACH OF CONTRACT

61.

Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 60 of the Complaint.

62.

Alternatively, upon admission, the Plaintiff and the Class entered into express form contracts with the Phoebe Putney Defendants whereby the Plaintiff and the Class were required to agree to pay unspecified and undocumented charges for medical care set by the Phoebe Putney Defendants in their sole discretion. Imputed in these contracts is the express and/or implied contractual obligation by the Phoebe Putney Defendants that they would charge the Plaintiff and the Class no more than a fair and reasonable charge for such medical care.

63.

Similarly, by accepting and admitting the Plaintiff and the Class into their hospital for medical care, the Phoebe Putney Defendants undertook an express and/or implied contractual obligation to charge the Plaintiff and the Class no more than a fair and reasonable charge for such medical care.

64.

The Phoebe Putney Defendants breached their contractual obligations under these form contracts by charging the Plaintiff and the Class the highest and full undiscounted cost for medical care. These charges are unfair, unreasonable, and bear no relation to the actual cost of providing such services.

65.

The abovementioned breaches of contract have proximately caused the Plaintiff and the Class economic injury and other damages.

## COUNT THREE
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

66.

Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 65 of the Complaint.

67.

The Phoebe Putney Defendants' conduct as alleged above also constitutes a breach of its duty of good faith and fair dealing.

68.

The Plaintiff and the Class are express and/or implied intended third party beneficiaries of Agreements between the United States Government, the State of Georgia, and local governments, wherein the Phoebe Putney Defendants agreed to provide mutually affordable medical care to the Plaintiff and the Class in return for substantial federal, state, and local tax exemptions.

69.

Alternatively, the Plaintiff and the Class entered into an express and/or implied contractual relationship with the Phoebe Putney Defendants wherein the Plaintiff and Class member was admitted to Phoebe Putney Memorial Hospital for the purpose of receiving medical care.

70.

The Phoebe Putney Defendants breached their duty of good faith and fair dealing to the Plaintiff and the Class by: failing to provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such care; charging the Plaintiff and the Class the highest and full undiscounted cost of medical care; charging the Plaintiff and the Class a higher amount for medical services than they charged their insured patients of their Medicare patients for the same services; utilizing aggressive, abusive, and harassing collection practices such as collection lawsuits, liens, and garnishments to collect such outstanding grossly inflated medical debt from the Plaintiff and the Class; and allowing noncharitable for-profit entities to derive a profit from use of its tax-exempt hospitals.

71.

Such unfair and bad faith conduct by the Phoebe Putney Defendants proximately caused economic injury and other damages to the Plaintiff and the Class.

## COUNT FOUR
## BREACH OF CHARITABLE TRUST

72.

Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 70 of the Complaint.

73.

By accepting federal, state and local tax exemptions under 26 U.S.C. §501(c)(3) and state laws, the Phoebe Putney Defendants created and entered into a public charitable trust to provide mutually affordable medical care to its uninsured patients.

74.

The Plaintiff and the Class are the intended beneficiaries of this charitable trust created by virtue of the Phoebe Putney Defendants' acceptance of federal, state and local tax exemptions.

75.

The Phoebe Putney Defendants have breached its charitable trust obligations to the Plaintiff and the Class by:  failing to provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care; charging the Plaintiff and the Class the highest and full undiscounted cost of medical care; charging the Plaintiff and the Class significantly more than their insured patients for the same medical services; failing to use their net assets and revenues in the hundreds of millions of dollars to provide mutually affordable medical care to the Plaintiff and the Class; utilizing aggressive, abusive and humiliating collection practices such as lawsuits, liens, and garnishments to collect such inflated and unreasonable medical debt from the Plaintiff and the Class; and allowing noncharitable for-profit entities to derive a profit from use of its tax-exempt hospital.  As a result of such conduct, the Plaintiff and the Class have not received the benefit of the charitable trust created for their benefit.

76.

The aforementioned breaches of charitable trust have caused the Plaintiff and the Class economic injury and other damages.

COUNT FIVE
## Georgia Uniform Deceptive Trade Practices Act and Fair Business Practices Act

77.

Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 76 of the Complaint.

78.

The Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. §10-1-372, *et al.* was enacted to prohibit and protect Georgia citizens from deceptive, fraudulent and unfair conduct.

79.

The Georgia Fair Business Practices Act, O.C.G.A. §10-1-391 *et seq.*, was enacted to protect consumers from "unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state."

80.

As alleged above, the Phoebe Putney Defendants' conduct in charging the Plaintiff and the Class the highest and full uncompensated cost for medical care and its charging the Plaintiff and the Class a higher amount than its insured patients for the same medical services, despite its charitable, nonprofit, tax exempt status, is in violation of the Georgia Uniform Deceptive Trade Practices Act and Fair Business Practices Act because it is unfair, discriminatory, unconscionable, unethical, immoral, and oppressive. Such conduct is against public policy and has caused substantial economic injury to the Plaintiff and the Class. The Phoebe Putney Defendants have willfully engaged in the trade practice knowing it to be deceptive.

81.

Moreover, as alleged above, the Phoebe Putney Defendants' aggressive, abusive, and harassing efforts to collect such inflated, undiscounted and uncompensated medical debt from the Plaintiff and the Class through collection lawsuits, liens and garnishments, despite its charitable, nonprofit, tax exempt status, is unfair, discriminatory, unethical, immoral, and oppressive. Such conduct is also against public policy and has caused substantial economic injury to the Plaintiff and the Class, including but not limited to damage to their credit ratings, bankruptcy and/or financial ruin.

82.

The abovementioned violations of the Georgia Uniform and Deceptive Trade Practices Act and Fair Business Practices Act have caused the Plaintiff and the Class economic injury and other damages.

### COUNT SIX
### VIOLATIONS OF THE EMERGENCY MEDICAL TREATMENT AND ACTIVE LABOR ACT

83.

Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 81 of the Complaint.

84.

Under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. §1395 dd, a "participating hospital" must provide a medical screening examination to any individual that comes into its emergency room for an "emergency medical condition" in order to determine whether such emergency medical condition exists. If such an "emergency medical condition" does in fact exist, the "participating hospital" must provide sufficient medical

examination and/or treatment necessary to stabilize the condition. The express intent of the EMTALA is to prohibit hospitals from denying or delaying emergency medical treatment to patients without medical insurance because of their uninsured status.

85.

The Phoebe Putney Defendants are "participating hospitals" as defined in 42 U.S.C. §1395 cc and §1395 dd.

86.

Before the Phoebe Putney Defendants would provide emergency medical screening and/or treatment for "emergency medical conditions" to the Plaintiff and the Class, they first analyzed their ability to pay for such medical care and required the Plaintiff and the Class to sign form contracts agreeing to pay the Phoebe Putney Defendants in full for unspecified and undiscounted medical charges. The Phoebe Putney Defendants would not provide emergency medical screening and/or treatment to the Plaintiff and Class unless they were able to pay for such medical care or until they agreed to sign a form contract guaranteeing payment in full for sum medical care. By conditioning medical screening and/or treatment for "emergency medical conditions" on the Plaintiff's and the Class' ability to pay and financial guarantees, and refusing to provide emergency medical screening and/or treatment until such guarantees were given, the Phoebe Putney Defendants violated the EMTALA, 42 U.S.C. §1395 dd. Such conduct in failing to provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care is also in violation of 26 U.S.C. §501(c)(30).

87.

Such violations of 42 U.S.C. §1395 dd have proximately caused the Plaintiff and the Class economic injury and other damages.

## COUNT SEVEN
## UNJUST ENRICHMENT/CONSTRUCTIVE TRUST

88.

Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 87 of the Complaint.

89.

The Phoebe Putney Defendants have been unjustly enriched at the Plaintiff's and the Class' expense. As alleged above, the Phoebe Putney Defendants have failed to provide mutually affordable medical care to the Plaintiff and the Class despite receiving millions of dollars in federal, state, and local tax exemptions for such purpose. Moreover, contrary to its charitable, nonprofit, tax exempt status, the Phoebe Putney Defendants have failed to utilize its substantial net assets and revenues, valued in the hundreds of millions of dollars, to provide mutually affordable medical care to the Plaintiff and the Class. The Phoebe Putney Defendants have also realized profits in the millions of dollars by charging the Plaintiff and the Class the highest and full undiscounted cost for medical care and by charging the Plaintiff and the Class a higher amount for medical care than their insured patients.

90.

The Plaintiff and the Class have suffered severe economic injury and other damages as a proximate consequence of The Phoebe Putney Defendants' unjust enrichment.

91.

As a result of the Phoebe Putney Defendants' breach of contract along with its wrongful, unfair, discriminatory, abusive, and noncharitable conduct, they are in possession of tax savings, profits and other assets that they in good conscience and equity should not be entitled to retain. The Plaintiff and the Class are therefore entitled to all damages resulting from the Phoebe Putney Defendants' unjust enrichment, including but not limited to, the imposition of a constructive trust in the amount of the Phoebe Putney Defendants' federal, state and local tax exemption savings. The Plaintiff and the Class are also entitled to the imposition of a constructive trust on all profits the Phoebe Putney Defendants wrongfully obtained by charging the Plaintiff and the Class the highest and full undiscounted cost of medical care. The Plaintiff and the Class are further entitled to the imposition of a constructive trust on the difference between the amount the Phoebe Putney Defendants have charged the Plaintiff and the Class and the amount they have charged their insured patients. Lastly, the Plaintiff and the Class are entitled to the imposition of a constructive trust on the Phoebe Putney Defendants' net assets and revenues in an amount sufficient to provide to the Plaintiff and the Class mutually affordable medical care pursuant to its charitable, nonprofit, tax exempt status.

## COUNT EIGHT
## INJUNCTIVE/DECLARATORY RELIEF

92.

Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 90 of the Complaint.

93.

As a result of the Phoebe Putney Defendants' wrongful, unfair, discriminatory, and unconscionable charging and collection practices, Plaintiff and the Class have suffered and, unless abated, will continue to suffer severe and irreparable harm and injury.

94.

Accordingly, Plaintiff and the Class respectfully request that this Court enter a preliminary and/or permanent injunction, in accordance with FRCP 23(b)(2), ordering the Phoebe Putney Defendants to cease and desist: charging the Plaintiff and the Class the highest and full undiscounted cost of medical care· charging the Plaintiff and the Class a higher amount for medical services than its insured patients for the same services; and utilizing aggressive, abusive, and harassing collection practices such as collection lawsuits, liens, and garnishments to collect outstanding grossly inflated medical debt from the Plaintiff and the Class.

95.

Plaintiff and the Class also seek a protective Order from the Court, in accordance with FRCP 26(b)(2), requiring the Phoebe Putney Defendants: to provide mutually affordable medical care to the Plaintiff and the Class;  to charge the Plaintiff and the Class no more for medical services than they charges their insured patients, and to cease its attempts to collect outstanding medical debt from the Plaintiff and the Class until its has complied with a 180-day waiting period and attempted in good faith to settle such outstanding debt with the Plaintiff and the Class through a graduated payment plan or other means.

## IX.
## DAMAGES

96.

Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 95 of the Complaint.

97.

As a direct and proximate result of the Phoebe Putney Defendants' breaches of contracts, breach of duty of good faith and fair dealing, violations of the Georgia Fair Business Practice Act Uniform Deceptive Trade Practices Act, violations of EMTALA, breaches of charitable trust, and unjust enrichment, the Plaintiff and the Class have suffered economic injury and damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that upon a trial of this action, judgment will be entered against the Phoebe Putney Defendants for:

1)      all economic, monetary, actual, consequential, and compensatory damages caused by the Phoebe Putney Defendants' conduct;

2)      a constructive trust to be imposed on:  the Phoebe Putney Defendants' federal, state and  local tax exempt savings; the Phoebe Putney Defendants' profits obtained from charging the Plaintiff and the Class the highest and full undiscounted cost for medical care; and the Phoebe Putney Defendants' net assets and revenues in an amount sufficient to provide the Plaintiff and the class mutually affordable medical care; and

3)      injunctive and/or declaratory relief.

-34-

**Jury trial requested.**

Respectfully submitted, this the _16th_ day of June, 2004.

VROON & CRONGEYER, LLP

BY: _____
Bryan A. Vroon
Georgia Bar No. 729086

BY: _____
John W. Crongeyer
Georgia Bar No. 197267

1230 Peachtree Street, Suite 2450
Atlanta, Georgia  30309
Telephone: (404) 607-6710
Facsimile:  (404) 607-6711

Don Barrett, Esq.
Barrett Law Office
404 Court Square North
P.O. Box 987
Lexington, Mississippi 39095
(662) 834-2376

(Petition for Admission to Plead and Practice Pro Hac Vice To Be Filed Immediately)

-35-