

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**

DEBORAH GAIL ELLIS , VIRGINIA )
FRANKLIN, BOBBY LEON MIXON, and )
JENETTE MIXON, On Behalf of Themselves )
and All Others Similarly Situated, )
                               )
      **Plaintiffs** )
                                 )
**vs.** )
                                 )
PHOEBE PUTNEY HEALTH SYSTEMS, )
INC.;PHOEBE PUTNEY MEMORIAL )
HOSPITAL, INC.; AMERICAN HOSPITAL )
ASSOCIATION, and JOHN DOES 1 )
THROUGH 10. )
                                 )
      **Defendants.** )
_____ )

**Civil Action No.: 1:04-CV-80-3-WLS**

### FIRST AMENDED COMPLAINT
### (JURY TRIAL DEMANDED)

    Under Rule 15 of the Federal Rules of Civil Procedure, as a matter of right before a responsive pleading is served, the Plaintiffs file this First Amended Complaint seeking monetary damages, injunctive and other equitable relief against the Defendants and allege the following:

**I.**
**INTRODUCTION**

1.

    Defendants Phoebe Putney Health System, Inc. and Phoebe Putney Memorial Hospital, Inc. ("the Phoebe Putney Defendants") have operated free from federal and state taxes because they promised the government that they would operate as a charity provider of health care for the uninsured and that it would not engage in business "directly or indirectly, for the benefit of private interests." In reality, the Phoebe Putney Defendants do just the opposite: they charge

their uninsured patients significantly more than those who have means, generally pursuing the poor or uninsured relentlessly by aggressive and humiliating collection techniques, and through physicians whose for-profit businesses are formed and subsidized by the "tax-free" organization, are rampantly violating the federal and state prohibition against profiteering by "private interests."

2.

The Phoebe Putney Defendants have inflated charges for patients without insurance for the purpose of boosting subsidies received from federal and state governments. Higher charges for the uninsured have led to higher reimbursements to the Phoebe Putney Defendants from the federal and state governments.

3.

At the expense of uninsured patients, the Defendants have been deceptively "gaming" and manipulating the system to maximize payments under federal and state medical funding programs.

4.

The Phoebe Putney Defendants' conduct is an unconscionable, discriminating, misleading, and deceptive creation and collection of inflated debts from uninsured patients.

5.

The Phoebe Putney Defendants and their "nonprofit" confederates across the country who employ the same business model have thereby amassed and hoarded billions of dollars in cash and marketable securities, which otherwise should be available to provide charity care to those who were contemplated by the tax exemption. Moreover, enormous property and revenues have been isolated from taxation, the effect of which has bestowed upon the Phoebe Putney

Defendants and their confederates greater liquidity than that possessed by most state and local governments. This Complaint asks the Court to certify a Class of the intended beneficiaries of the Phoebe Putney Defendants' commitment to the government, more fully defined below, and to require the Phoebe Putney Defendants to honor the commitments for which they have received their unique freedom from taxation.

6.

The Phoebe Putney Defendants, an Albany based healthcare provider, tell their patients that they operate a charitable hospital on a nonprofit basis. In truth, the Phoebe Putney Defendants operate one of the most "profitable" hospitals in Georgia, with net assets of over $300 million dollars. This profit was accumulated because the Phoebe Putney Defendants have enjoyed tax exemptions as "nonprofit" charitable institutions, while charging their patients anything but charitable rates.

7.

Despite its surplus revenues and substantial federal, state, and local tax exemptions, the Phoebe Putney Defendants have engaged in the pattern and practice of charging inordinate and inflated rates for medical care to the Plaintiffs and the Class, who are uninsured Phoebe Putney patients. The Phoebe Putney Defendants charge the Plaintiffs and the Class significantly more for medical services than they charge their insured patients for the same services. They also utilize aggressive, abusive and humiliating collection practices to recover these inflated medical debts from the Plaintiffs and the Class.

8.

Such charging and collection practices violate the Phoebe Putney Defendants' agreements with the United States Government, the State of Georgia and local governments to

provide mutually affordable medical care to the Plaintiffs and the Class in return for substantial federal, state and local tax exemptions. Moreover, the Phoebe Putney Defendants have breached their duty of good faith and fair dealing toward the Plaintiffs and the Class. The Phoebe Putney Defendants' abusive, discriminatory and unfair conduct toward the Plaintiffs and the Class is also in violation of Georgia's Uniform Deceptive Trade Practices Act and Fair Business Practice Act. The Phoebe Putney Defendants have been unjustly enriched at the Plaintiffs' and Class' expense, warranting the imposition of a constructive trust on its wrongfully obtained tax savings, assets, and profits.

## II.
## UNINSURANCE IN GEORIGA

9.

Uninsurance is a prevalent problem for many citizens in Georgia. About 1,260,700 Georgians do not have health insurance. This is about 17 percent of Georgia's population.

10.

For most uninsured Georgians, at least one person in the family works either full-time or part-time. Many have family members who work full-time all year.

11.

Because the Medicare program provides health insurance for most people age 65 and over, the uninsured are almost entirely under the age of 65. The largest number of uninsured are those aged 30-49, but the rate of uninsurance is highest for young adults, aged 19-29.

12.

The uninsured are disproportionately racial and ethnic minorities.

Employer-based coverage is often unavailable or unaffordable. Uninsured people who have jobs may face one or more of the following barriers:

- Smaller employers are less likely to offer health insurance to their employees, because premiums are prohibitively expensive.

- Service and labor jobs are less likely to provide workers with health insurance.

- Part-time workers are often not eligible for insurance.

- Even when employers offer health insurance to low-wage workers, the premiums tend to be higher than for higher-paid workers. Low-wage workers have a harder time affording these premiums, and are more likely to remain uninsured.

14.

People who lose their jobs often lose their health insurance.

15.

Some workers who lose their jobs may be eligible to keep their health insurance through COBRA. To obtain COBRA coverage, workers must pay the entire cost of the premium. Premiums are expensive, and newly unemployed workers have generally had their incomes dramatically reduced.

16.

Buying coverage in the private individual market is often prohibitively expensive. In 2002, a typical standard individual health insurance policy in Georgia cost $1,104 per year for a healthy 25-year-old woman and $2,424 per year for a healthy 55-year-old woman. A healthy single woman with earnings equal to the poverty level of $8,980 per year would have to spend about 10 to 30 percent of her entire income on health insurance to buy such a policy.

17.

People with any sort of health problem or risk factor, from hay fever to HIV, must pay

significantly more for private insurance, or may not be able to obtain insurance at all.

18.

The health care safety net leaves many people uncovered, especially adults. Many low-

income people, especially adults, cannot qualify for health insurance through safety net programs

like Medicaid. More than 80 percent of all uninsured adults nationwide with incomes below 200

percent of the federal poverty level are ineligible for Medicaid and other public health insurance

programs.

19.

In Georgia, working parents earn too much to qualify for Medicaid if their income is over

approximately 59 percent of the federal poverty level for a family of three.

### III.
### PARTIES

20.

Plaintiff Deborah Gail Ellis is an adult resident citizen of Albany, Georgia, residing at

201 Ebony Lane, Albany, Georgia 31701. Plaintiff Virginia Franklin is an adult resident citizen

of Albany, Georgia residing at 816 West Gordon Avenue, Albany, Georgia 31705. Plaintiffs

Bobby Leon Mixon and Jenette Mixon reside at 194 Stoney Creek Terrace, Dahlonega, Georgia

30533. Mr. and Mrs. Mixon are former residents of Albany, Georgia.

21.

Defendants Phoebe Putney Health System, Inc. and Phoebe Putney Memorial Hospital,

Inc. are Georgia not-for-profit corporations with their principal place of business in Albany,

Georgia. Both Phoebe Putney Health System, Inc. and Phoebe Putney Memorial Hospital, Inc.

may be served with process through its registered agent, Joel Wernick, 417 Third Avenue,

Albany, Georgia 31701.

22.

Defendant American Hospital Association ("AHA") is the national trade association for

the nonprofit hospital industry. The AHA may be served with the Summons and Complaint and

First Amended Complaint through its registered agent who is James A. Henderson, 1 North

Franklin Street, Suite 2700, Chicago, Illinois 60606-3470.

23.

The various Defendants, designated John Does 1 through 10, are, based upon information

and belief, certain unknown and unnamed persons and/or entities who may be liable for the

claims asserted herein, who include but are not limited to agents, servants, employees,

representatives, affiliates, parents, subsidiaries, joint tortfeasors, tortfeasors, contractors, co-

conspirators, joint adventures, partners, stockholders, and any other person or entitled of the

named Defendants and/or any other persons who may be liable to the Plaintiffs for the claims

asserted herein.

**IV.**
**JURISDICTION AND VENUE**

24.

This Court has jurisdiction over the subject matter of this controversy pursuant to 28

U.S.C. §1331 and 1367, because Plaintiffs' claims arise out of a federal contract between the

Phoebe Putney Defendants and the United States Government in which the Phoebe Putney

Defendants agreed to provide mutually affordable medical care to its uninsured patients in

-7-

exchange for a tax exempt status under 26 U.S.C. §501(c)(3). This Court also has subject matter jurisdiction of this controversy under 42 U.S.C. § 1983, the Fifth Amendment of the United States Constitution, and the Fourteenth Amendment of the United States Constitution. This Court also has subject matter jurisdiction of this controversy under 42 U.S.C. §1395 dd because the Phoebe Putney Defendants failed to provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such emergency medical care. This Court further has subject matter jurisdiction of this controversy under 28 U.S.C. §1340 because Plaintiffs' claims arise out of the Phoebe Putney Defendants' duties and obligations under 26 U.S.C. §501(c)(3).

25.

Venue in this district is proper pursuant to 28 U.S.C. §1391(b).

**V.**
**FACTS**

26.

The Phoebe Putney Defendants represent themselves as an Albany based, tax exempt, charitable, nonprofit hospital system.

27.

Phoebe Putney Memorial Hospital is the largest healthcare provider in Southwest Georgia. The Phoebe Putney Defendants control the highest market share of medical care in a region of 26 counties located in Southwest Georgia.

28.

The Phoebe Putney Defendants operate one of the most financially lucrative hospitals in Georgia. For example, in their Form 990 for the fiscal year ending July 31, 2002, the Phoebe

Putney Defendants together reported having cash and marketable securities valued at $216,610,656.00 and real property, buildings and equipment valued at the historical cost of $327,489,513.00. The Phoebe Putney Defendants together reported net assets of $296,270,472.00 on their Form 990 filed with the Internal Revenue Service as of July 31, 2002. In the independent auditor's report for Phoebe Putney Health System, Inc. and related entities as of July 31, 2003, net assets are listed as $327,172,645.00. Defendant Phoebe Putney Health Systems has also filed a form 5471, Information Return for U.S. Persons With Respect To Certain Foreign Corporations for Grove Pointe Indemnity SPC located in an off-shore account in the Grand Cayman Islands. As of July 31, 2002, Grove Pointe had cash of $5,691,019.99. The Phoebe Putney Defendants' net assets exceed 300 million dollars.

29.

The Phoebe Putney Defendants entered into express and/or implied Agreements with the United States Government, the State of Georgia and local governments to provide mutually affordable medical care to all of its patients in return for substantial tax exemptions. An express and/or implied contractual relationship was thereby created between The Phoebe Putney Defendants and the United States Government, the State of Georgia and local governments to accomplish such purpose. The Phoebe Putney Defendants' uninsured patients were the express and/or implied intended third party beneficiaries of such Agreements.

30.

The Phoebe Putney Defendants have applied for and received a federal income tax exemption as purported "charitable" institutions under 26 U.S.C. §501(c)(3). Under §501(c)(3), the Phoebe Putney Defendants are required to operate "exclusively" in furtherance of a charitable purpose, with no part of its operations attributable directly or indirectly to any

noncharitable commercial purpose. By accepting this favorable tax exemption, the Phoebe Putney Defendants explicitly and/or implicitly agreed: to provide an emergency room open to all of its uninsured patients without regard to their ability to pay for such care; to provide mutually affordable medical care to all of its patients; to charge its uninsured patients only a reasonable cost for medical care; not to charge its uninsured patients the highest and full undiscounted cost for medical care; not to charge its uninsured patients a higher rate for medical care than its insured patients; to use its net assets and revenues to provide mutually affordable medical care to its uninsured patients; and not to pursue outstanding medical debt from its uninsured patients through humiliating collection efforts, lawsuits, liens and garnishments.

31.

Under Georgia law's definitions for tax exemption purposes, "nonprofit hospitals . . . mean such institutions or hospitals which may have incidental income from paying patients, when the income, if any, is devoted exclusively to the charitable purpose of caring for patients who are unable to pay and to maintaining, operating, and improving the facilities of such institutions and hospitals, and when the income is not directly or indirectly for distribution to shareholders in corporations owning such property or to other owners of such property." O.C.G.A. §48-5-40(5). The Phoebe Putney Defendants have applied for and received state and local income, property and sales tax exemptions from the State of Georgia and local governments. By accepting these favorable state and local tax exemptions, the Phoebe Putney Defendants explicitly and/or implicitly agreed: to provide mutually affordable medical care to all of its patients; to charge its uninsured patients only a reasonable cost for medical care; not to charge its uninsured patients the highest and full undiscounted cost of medical care; not to charge its uninsured patients a higher rate for medical care than its insured patients; to use its net

-10-

assets and revenues to provide mutually affordable medical care to its uninsured patients; and not to pursue outstanding medical debt from its uninsured patients through humiliating collection efforts, lawsuits, liens and garnishments.

32.

Despite their favorable tax exempt status and its substantial net revenues and asset reserves in the hundreds of millions of dollars, the Phoebe Putney Defendants have breached their Agreements with the United States Government, the State of Georgia and local governments by: failing to provide emergency room medical care to its uninsured patients without regard to their ability to pay for such care; charging its uninsured patients the highest and full undiscounted cost for medical care at grossly inflated rates from the actual cost of providing such services; providing discounted medical care to entities connected to or affiliated with their Board of Directors; allowing noncharitable for-profit physician groups and service providers to derive profit from their tax-exempt hospitals; and by engaging in aggressive efforts to collect undiscounted medical debt from its uninsured patients through abusive, harassing, and humiliating collection lawsuits, liens, and garnishments. The Phoebe Putney Defendants' uninsured patients have therefore not received the benefit of the Agreements between the Phoebe Putney Defendants and the United States Government, the State of Georgia, and local governments. These uninsured patients primarily consist of the working class who do not qualify for Medicaid but cannot afford private health insurance and/or cannot obtain health insurance coverage through their employers.

33.

The Phoebe Putney Defendants set their charges for medical services at highly inflated rates that bear no connection to the actual cost of providing the service. While the Phoebe

Putney Defendants give private insurance companies and governmental third party payors like Medicare and Medicaid discounts off this gross or "sticker price," their uninsured patients are charged 100% of the full sticker price, or at least substantially more than the Medicare rate.

34.

The Phoebe Putney Defendants provide substantial discounts for noncharitable private insurers. These discounts violate 26 U.S.C. §501(c)(3)'s prohibition against operating directly or indirectly for non-charitable commercial purposes.

35.

The Phoebe Putney Defendants realize substantial revenues from this discriminatory charging practice.

36.

Despite sizeable net revenues and its asset reserves in the hundreds of millions of dollars, the Phoebe Putney Defendants provide little charity care to their uninsured patients. The Phoebe Putney Defendants have never provided an amount of uncompensated care equal to their market share. The Phoebe Putney Defendants' level of charity care constitutes only a small amount of their gross charges.

37.

Before the Phoebe Putney Defendants admit any patient, including its uninsured patients, into its hospitals and/or emergency rooms for emergency medical care, they require their patients to sign a form contract promising to pay the Phoebe Putney Defendants in full for unspecified and undocumented charges for medical care that are set by the Phoebe Putney Defendants in their sole discretion. The Phoebe Putney Defendants will not admit a patient into their

emergency rooms for emergency medical care unless that patient agrees to pay Phoebe Putney in full for such unspecified and undiscounted charges.

38.

Not only do the Phoebe Putney Defendants charge their uninsured patients the highest rates for medical care, which they cannot afford to pay, they have also engaged in the uniform pattern and practice of aggressively pursuing such debt through abusive, humiliating, and harassing collection efforts, such as collection lawsuits, liens, and garnishments. Such lawsuits have driven many Phoebe Putney patients to bankruptcy and/or financial ruin.

39.

While the Phoebe Putney Defendants charge their uninsured patients the full undiscounted amounts for medical care, upon information and belief, they provide substantial discounts off the gross charges to entities owned, controlled or connected to their Board of Directors. These discounts violate the Phoebe Putney Defendants' obligations under 26 U.S.C. §501(c)(3).

40.

The Phoebe Putney Defendants also allow noncharitable "for profit" entities such as physician groups and service providers to use their tax-exempt hospitals to derive profits. These for-profit physician groups and service providers practice in the Phoebe Putney Defendants' hospitals and then bill patients for work done at these tax-exempt hospitals. These for-profit physician groups and service providers are noncharitable entities which do not have a charitable mission or purpose. By allowing noncharitable for-profit entities with the charitable mission to derive a profit from its tax-exempt hospitals, the Phoebe Putney Defendants have not operated actually and exclusively for charitable purposes in violations of its obligations under 26 U.S.C.

-13-

§501(c)(3). This conduct violates §501(c)(3)'s requirement that a hospital operate exclusively for charitable purposes.

41.

The Defendant American Hospital Association is the national trade association for the nonprofit hospital industry, and serves as the representative for Defendant the Phoebe Putney Defendants and its nonprofit hospital members. According to its website, the AHA "ensures that members' perspectives and needs are heard and addressed in national health policy development, legislative and regulatory debates, and judicial matters."

42.

The American Hospital Association ("AHA"), the self-proclaimed representative of the Phoebe Putney Defendants and the nonprofit hospital industry, provides substantial assistance and guidance to the Phoebe Putney Defendants and the nonprofit hospital industry on their billing and collection practices for uninsured patients. The AHA has conspired with and aided and abetted the Phoebe Putney Defendants with their billing and collection practices described above.

43.

AHA, through internal memos called "white papers" and other publications, provides substantial assistance and guidance to the Phoebe Putney Defendants and the nonprofit hospital industry on its billing and collection practices for uninsured patients. For example, on December 17, 2003, the AHA sent out a "white paper" entitled "Federal Regulations Hamper Hospitals' Efforts to Assist Patients of Limited Means" to the Phoebe Putney Defendants, which advised such hospitals that the Medicare laws and regulations prevented them from offering discounts to uninsured patients and required them to aggressively collect medical debt from the uninsured

-14-

through collection lawsuits, liens, and garnishments. In these publications, the AHA encourages the Phoebe Putney Defendants and its nonprofit hospital members to inflate its chargemaster prices. These inflated chargemaster prices applied by the Phoebe Putney Defendants only to uninsured patients have the intended effect of increasing the amount of subsidies that the Phoebe Putney Defendants receive from state and federal governments.

44.

The AHA actively conceals and misrepresents from the government and regulatory agencies the amount of charity care provided by the Phoebe Putney Defendants to the uninsured. According to a June 21, 2004, article in <u>Modern Healthcare</u> entitled "Well Kept Secret," "the AHA collects charity care data [from its members] in its annual hospital survey but does not report the total. Instead, it reports uncompensated care which includes bad debt as well as charity care."

## VI.
## PLAINTIFFS

45.

Plaintiff Deborah Gail Ellis is an adult resident of Albany, Georgia. She works full-time, however, her employer does not provide health insurance and she cannot afford to purchase coverage. She is the head of her household and supports her teenage son.

46.

She was briefly admitted to Phoebe Putney Memorial Hospital for symptoms relating to her congestive heart failure and hypertension. As a condition of her treatment, she was required to sign forms upon admission which guaranteed payment of unspecified and undiscounted

medical charges.  At the time of her treatment, she was earning approximately 5-6 dollars per

hour as a telephone operator for a business which answers phones after hours.

47.

After her discharge, Phoebe Putney Memorial Hospital sent her numerous collection

notices and repeatedly called her home.  Phoebe Putney Memorial Hospital filed suit against her

for the amount of $3,008.00 and obtained a judgment against her on or about December 12,

2003.  Ms. Ellis could not afford to hire an attorney to defend her.  Using that judgment, Phoebe

Putney Memorial Hospital has garnished her modest wages.  Ms. Ellis has continued to be

barraged by collection notices from the Phoebe Putney Defendants for other amounts not

included in the judgment.

48.

Ms. Ellis also visited the Phoebe Putney Memorial Hospital Emergency Room on or

about June 21, 2003.  As a condition of treatment she was required to sign contract forms which

guaranteed payment of unspecified and undiscounted charges.

49.

For this visit, the Hospital charged Ms. Ellis inflated rates which significantly exceeded

rates charged for insured patients or patients with Medicaid or Medicare coverage.  The Hospital

has aggressively attempted to collect these inflated charges from Ms. Ellis through repetitive

letters, collection notices, phone calls, and threats of litigation.

50.

Ms. Ellis also visited the Phoebe Putney Memorial Hospital Emergency Room in May

2004 with symptoms of abdominal pain.  As a condition of treatment, the Hospital again required

her to sign contract forms which guaranteed payment of unspecified and undiscounted charges.

-16-

The Phoebe Putney Defendants again charged her inflated medical rates because she had no health insurance.

51.

Ms. Virginia Franklin is an adult resident of Albany, Georgia. Ms. Virginia Franklin did not have health insurance when she was treated briefly at the Emergency Room at Phoebe Putney Memorial Hospital.

52.

The Phoebe Putney Defendants required Ms. Franklin to sign documents which guaranteed payment of unspecified charges as a condition of treatment.

53.

The Phoebe Putney Defendants overcharged her because she had no health insurance. The Phoebe Putney Defendants attempted to collect an inflated medical debt of approximately $1,229.00.

54.

The Phoebe Putney Defendants refused to offer her financial assistance, sent her account to collections, and then sued her for these excessive inflated medical charges.

55.

The Phoebe Putney Defendants then garnished her modest wages of approximately $7.00 per hour working as a laundry cleaner.

56.

Plaintiffs Mr. and Mrs. Mixon were residing in Albany, Georgia. Mrs. Mixon was working as an office manager for a doctor's office, however, her employer did not provide health insurance coverage.

57.

Mrs. Mixon underwent a forty-five minute outpatient procedure at Phoebe Putney Memorial Hospital. Because Mrs. Mixon did not have health insurance in effect, the Phoebe Putney Defendants charged Mr. and Mrs. Mixon inflated and excessive medical rates which totaled approximately $3,500.00 for this brief outpatient procedure.

58.

Mr. Mixon requested an audit of the excessive bill from the Phoebe Putney Defendants and the Phoebe Putney Defendants refused to audit the bill.

59.

Mr. and Mrs. Mixon live off of modest Social Security payments each month. Mr. Mixon is 67 years old and Mrs. Mixon is 64 years old. Mrs. Mixon is recovering from breast cancer and Mr. Mixon has heart disease. Still the Phoebe Putney Defendants have hired a collection agency to pursue aggressively this inflated medical debt from Mr. and Mrs. Mixon.

60.

The Phoebe Putney Defendants charged Plaintiffs and the Class inflated rates which significantly exceeded rates charged to insured patients or patients with Medicaid or Medicare coverage. The Phoebe Putney Defendants have aggressively attempted to collect such inflated charges from Plaintiffs and the Class.

61.

The Phoebe Putney Defendants' actions have caused Plaintiffs economic damages.

**VII.**
**CLASS ACTION ALLEGATIONS**

62.

Plaintiffs bring this class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of a Class consisting of all persons who received any form of healthcare treatment from the Phoebe Putney Defendants and who were uninsured at the time of treatment.

63.

The rates charged by the Phoebe Putney Defendants to Plaintiffs significantly exceeded the discounted rates charged by the Phoebe Putney Defendants for insured patients or patients with Medicaid or Medicare coverage. The rates charged by the Phoebe Putney Defendants to Plaintiffs bear no relation to the actual cost of the medical care.

64.

Plaintiffs are members of the Class they seek to represent.

65.

The Class consists of thousands of individuals and therefore is so numerous that joinder is impracticable.

66.

Plaintiffs' claims are typical of the claims of the Class because they and all of the Class sustained damages as a result of the Phoebe Putney Defendants' unfair and discriminatory charging and/or collection practices seeking the full undiscounted cost of medical care.

67.

There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a)      whether the Phoebe Putney Defendants entered into express and/or implied Agreements with the United States Government, the State of Georgia, and local governments that in return for substantial tax exemptions, they would: operate exclusively for charitable purposes; provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such medical care; provide mutually affordable medical care to the Plaintiffs and the Class; and not to seek to collect outstanding medical debt from the Plaintiffs and the Class through aggressive, abusive, and humiliating collection practices;

(b)      whether the Phoebe Putney Defendants breached said Agreements with the U.S. Government, State of Georgia, and local governments by: failing to operate exclusively for charitable purposes; failing to provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such medical care; failing to provide mutually affordable medical care to the Plaintiffs and the Class; providing discounted medical care to entities connected to or affiliated with their Board of Directors; allowing charitable "for profit" physician groups and service providers to derive profit from their tax exempt hospital;

and by seeking to collect outstanding undiscounted medical debt from the Plaintiffs and the Class through aggressive, abusive, and humiliating collection practices;

(c) whether the Plaintiffs and the Class are express and/or implied intended third party beneficiaries to said Agreements between the Phoebe Putney Defendants and the United States Government, the State of Georgia, and local governments;

(d) whether the Phoebe Putney Defendants charged the Plaintiffs and the Class the full undiscounted cost of medical care in violation of its charitable, nonprofit, tax exempt status;

(e) whether the Phoebe Putney Defendants charged the Plaintiffs and the Class higher amounts for medical care than their insured patients in violation of its charitable, nonprofit, tax exempt status;

(f) whether the Phoebe Putney Defendants profited by charging the Plaintiffs and the Class the highest rates for medical care;

(g) whether the Phoebe Putney Defendants billed the Plaintiffs and the Class unreasonable charges for medical care;

(h) whether the Phoebe Putney Defendants failed to provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such medical care in violation of 26 U.S.C. §501(c)(3) and 42 U.S.C. §1395 dd;

(i) whether the Phoebe Putney Defendants conditioned emergency room medical screening and/or treatment to the Plaintiffs and the Class on their

-21-

ability to pay or financial guarantees to pay for such medical care in violation of 26 U.S.C. §501(c)(3) and 42 U.S.C. §1395 dd;

(j)     whether the Phoebe Putney Defendants should have utilized their sizable financial resources to provide a greater amount of mutually affordable medical care to the Plaintiffs and the Class pursuant to its charitable, nonprofit, tax exempt status;

(k)     whether the Phoebe Putney Defendants have utilized aggressive, unfair, abusive, and harassing collection practices, lawsuits, liens, and garnishments to collect medical payments from the Plaintiffs and the Class in violation of their charitable, nonprofit, tax exempt status;

(l)     whether the Phoebe Putney Defendants violated the anti-inurement provision under 26 U.S.C. §501 (c)(3);

(m)     whether the Phoebe Putney Defendants failed to operate exclusively for charitable purposes by allowing noncharitable for-profit entities to derive a profit from its use of its tax-exempt hospitals in violation of 26 U.S.C. §501(c)(3).

(n)     whether the Phoebe Putney Defendants breached their duty of good faith and fair dealing to the Plaintiffs and the Class;

(o)     whether a charitable trust was created for the benefit of the Plaintiffs and the Class;

(p)     whether the Phoebe Putney Defendants' actions as alleged in the Amended Complaint violated Georgia's Fair Business Practices Act and Uniform Deceptive Trade Practices Act;

(q)     whether the Phoebe Putney Defendants have been unjustly enriched at the Plaintiffs' and the Class' expense;

(r)     whether the AHA conspired with the Phoebe Putney Defendants to breach their contracts with the United States government, State of Georgia, and local governments;

(s)     whether the AHA aided and abetted the Phoebe Putney Defendants in breaching their contracts with the United States government, the State of Georgia, and local governments;

(t)     whether the AHA also aided and abetted the Phoebe Putney Defendants' violations of the Georgia Fair Business Practices Act and Uniform Deceptive Trade Practices Act and the Phoebe Putney Defendants' breach of its duty of good faith and fair dealing toward the Plaintiffs and the Class;

(u)     whether the AHA aided and abetted the Phoebe Putney Defendants' violations of 42 U.S.C. § 1983, the Fourteenth Amendment of the United States Constitution, and the Fifth Amendment of the United States Constitution;

(v)     whether the Phoebe Putney Defendants, either directly or through their Collection Agencies, have utilized false, misleading or deceptive practices to create and collect inflated medical charges from Plaintiffs and the Class in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.;

(w)     whether the Phoebe Putney Defendants acted under color of state law and are liable to Plaintiffs under 42 U.S.C. § 1983 for violations of their constitutional rights under the Fourteenth Amendment of the United States Constitution;

(x;     whether the Phoebe Putney Defendants acted under color of federal law and are liable to Plaintiffs for violating their constitutional rights under the Fifth Amendment of the United States Constitution;

(y)     whether the Phoebe Putney Defendants should be enjoined from continuing their unfair, discriminatory, deceptive and abusive conduct; and

(z)     whether Defendants are liable to the Plaintiffs and the Class in this action, as alleged in the Complaint.

68.

All common questions are able to be resolved through the same factual occurrences as specifically and/or generally alleged herein.

69.

Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs have no claims antagonistic to those of the Class. Plaintiffs have retained competent and experienced counsel in complex class actions, and mass tort and products liability litigation. Counsel is committed to the vigorous prosecution of this action.

70.

The prosecution of separate actions by the Plaintiffs and individual members of the Class against the Defendants would create a risk of inconsistent or varying adjudications on the common issues of law and fact related to this action.

71.

A Class Action is superior to all other available methods for the fair and efficient adjudication of this controversy.

72.

The expense and burden of litigation would substantially impair the ability of the Class Members to pursue individual cases in order to initiate their rights. In the absence of a class action, the Defendants will retain the benefits of their wrongdoing.

73.

Class certification pursuant to Rule 23(b)(3) is appropriate because the common issues of fact and law alleged herein are common to the Class and predominate over any questions affecting only individual members, thereby rendering the class action superior to all other available methods for the fair and efficient adjudication of this controversy.

74.

Class certification is also appropriate pursuant to Rule 23(b)(2) because, as set forth in the Complaint, the Phoebe Putney Defendants have acted and/or refused to act on grounds generally applicable to the Plaintiffs and the Class, thereby warranting appropriate injunctive and/or declaratory relief.

# VIII.
## CAUSES OF ACTION

### COUNT ONE
### THIRD PARTY BREACH OF CONTRACT

75.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 74 of the First Amended Complaint.

76.

The Phoebe Putney Defendants, as purported charitable entities under U.S.C. §501(c)(3), entered into an express and/or implied Agreement with the United States Government pursuant to U.S.C. §501(c)(3) that in return for a substantial federal income tax exemption valued in the millions of dollars it would: operate exclusively for charitable purposes; provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such medical care; provide mutually affordable medical care to the Plaintiffs and the Class; and not to pursue outstanding medical debt from the Plaintiffs and the Class by engaging in aggressive, abusive, and humiliating collection practices; and not provide financial inurement to private individuals or entities.

77.

The Phoebe Putney Defendants, as a purported institution of public charity, also entered into express and/or implied Agreements with the State of Georgia and local governments that in return for substantial state income, property, and sales tax exemptions valued in the millions of dollars, it would: operate exclusively for charitable purposes; provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such medical care; provide mutually affordable medical care to the Plaintiffs and the Class; and not to pursue

outstanding medical debt from the Plaintiffs and the Class by engaging in aggressive, abusive, and humiliating collection practices; and not provide financial inurement to private individuals and entities.

78.

The Plaintiffs and the Class are the express and/or implied intended third party beneficiaries of the Phoebe Putney Defendants' Agreements with the United States Government, the State of Georgia and local governments.

79.

The Phoebe Putney Defendants breached the above-mentioned Agreements with the United States Government, the State of Georgia, and local governments by: failing to provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such medical care; charging the Plaintiffs and the Class the inflated rates for medical care; charging the Plaintiffs and the Class more than its insured patients for the same medical services; failing to use its net assets and revenues in the hundreds of millions of dollars to provide mutually affordable medical care to the Plaintiffs and the Class; utilizing aggressive, abusive and humiliating collection practices such as lawsuits, liens, and garnishments to collect such inflated and unreasonable medical debt from the Plaintiffs and the Class; providing discounts off the gross charges to entities connected to or affiliated with its Board of Directors; and allowing noncharitable for-profit entities to derive a profit from use of its tax-exempt hospital. As a result of such conduct, the Plaintiffs and the Class have not received the benefit of the Phoebe Putney Defendants' Agreements with the United States Government, the State of Georgia, and local governments. Such conduct is also contrary to the Phoebe Putney Defendants' purported charitable purpose and its nonprofit status.

## COUNT TWO
## BREACH OF CONTRACT

### 80.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 74 of the First Amended Complaint.

### 81.

Alternatively, upon admission, the Plaintiffs and the Class entered into express form contracts with the Phoebe Putney Defendants whereby the Plaintiffs and the Class were required to agree to pay unspecified and undocumented charges for medical care set by the Phoebe Putney Defendants in their sole discretion. Imputed in these contracts is the express and/or implied contractual obligation by the Phoebe Putney Defendants that they would charge the Plaintiffs and the Class no more than a fair and reasonable charge for such medical care.

### 82.

Similarly, by accepting and admitting the Plaintiffs and the Class into their hospital for medical care, the Phoebe Putney Defendants undertook an express and/or implied contractual obligation to charge the Plaintiffs and the Class no more than a fair and reasonable charge for such medical care.

### 83.

The Phoebe Putney Defendants breached their contractual obligations under these form contracts by charging the Plaintiffs and the Class inflated rates for medical care. These charges are unfair, excessive, unreasonable, and bear no relation to the actual cost of providing such services.

84.

The abovementioned breaches of contract have proximately caused the Plaintiffs and the Class economic injury and other damages.

## COUNT THREE
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

85.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 74 of the First Amended Complaint.

86.

The Phoe<sub></sub>e Putney Defendants' conduct as alleged above also constitutes a breach of its duty of good faith and fair dealing.

87.

The Plaintiffs and the Class are express and/or implied intended third party beneficiaries of Agreements between the United States Government, the State of Georgia, and local governments, wherein the Phoebe Putney Defendants agreed to provide mutually affordable medical care to the Plaintiffs and the Class in return for substantial federal, state, and local tax exemptions.

88.

Alternatively, the Plaintiffs and the Class entered into an express and/or implied contractual relationship with the Phoebe Putney Defendants wherein the Plaintiffs and Class member was admitted to Phoebe Putney Memorial Hospital for the purpose of receiving medical care.

89.

The Phoebe Putney Defendants breached their duty of good faith and fair dealing to the Plaintiffs and the Class by: failing to provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such care; charging the Plaintiffs and the Class the inflated and excessive rates for medical care; charging the Plaintiffs and the Class a higher amount for medical services than they charged their insured patients of their Medicare patients for the same services; utilizing aggressive, abusive, and harassing collection practices such as collection lawsuits, liens, and garnishments to collect such outstanding grossly inflated medical debt from the Plaintiffs and the Class; and allowing noncharitable for-profit entities to derive a profit from use of its tax-exempt hospitals.

90.

Such unfair and bad faith conduct by the Phoebe Putney Defendants proximately caused economic injury and other damages to the Plaintiffs and the Class.

### COUNT FOUR
### BREACH OF CHARITABLE TRUST

91.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 74 of the First Amended Complaint.

92.

By accepting federal, state and local tax exemptions under 26 U.S.C. §501(c)(3) and state laws, the Phoebe Putney Defendants created and entered into a public charitable trust to provide mutually affordable medical care to its uninsured patients.

93.

The Plaintiffs and the Class are the intended beneficiaries of this charitable trust created by virtue of the Phoebe Putney Defendants' acceptance of federal, state and local tax exemptions.

94.

The Phoebe Putney Defendants have breached its charitable trust obligations to the Plaintiffs and the Class by: failing to provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such medical care; charging the Plaintiffs and the Class excessive and inflated rates for medical care; charging the Plaintiffs and the Class significantly more than their insured patients for the same medical services; failing to use their net assets and revenues in the hundreds of millions of dollars to provide mutually affordable medical care to the Plaintiffs and the Class; utilizing aggressive, abusive and humiliating collection practices such as lawsuits, liens, and garnishments to collect such inflated and unreasonable medical debt from the Plaintiffs and the Class; and allowing noncharitable for-profit entities to derive a profit from use of its tax-exempt hospital. As a result of such conduct, the Plaintiffs and the Class have not received the benefit of the charitable trust created for their benefit.

95.

The aforementioned breaches of charitable trust have caused the Plaintiffs and the Class economic injury and other damages.

## Georgia Uniform Deceptive Trade Practices Act and Fair Business Practices Act

96.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 74 of the First Amended Complaint.

97.

The Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. §10-1-372, *et al.* was enacted to prohibit and protect Georgia citizens from deceptive, fraudulent and unfair conduct.

98.

The Georgia Fair Business Practices Act, O.C.G.A. §10-1-391 *et seq.,* was enacted to protect consumers from "unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state."

99.

As alleged above, the Phoebe Putney Defendants' conduct in charging the Plaintiffs and the Class excessive and inflated rates for medical care and its charging the Plaintiffs and the Class a higher amount than its insured patients for the same medical services, despite its charitable, nonprofit, tax exempt status, is in violation of the Georgia Uniform Deceptive Trade Practices Act and Fair Business Practices Act because it is unfair, discriminatory, unconscionable, unethical, immoral, and oppressive. Such conduct is against public policy and has caused substantial economic injury to the Plaintiffs and the Class. The Phoebe Putney Defendants have willfully engaged in the trade practice knowing it to be deceptive.

100.

Moreover, as alleged above, the Phoebe Putney Defendants' aggressive, abusive, and harassing efforts to collect such inflated medical debt from the Plaintiffs and the Class through collection lawsuits, liens and garnishments, despite its charitable, nonprofit, tax exempt status, is unfair, discriminatory, unethical, immoral, and oppressive. Such conduct is also against public policy and has caused substantial economic injury to the Plaintiffs and the Class, including but not limited to damage to their credit ratings, bankruptcy and/or financial ruin.

101.

The abovementioned violations of the Georgia Uniform and Deceptive Trade Practices Act and Fair Business Practices Act have caused the Plaintiffs and the Class economic injury and other damages.

## COUNT SIX
## VIOLATIONS OF THE EMERGENCY MEDICAL TREATMENT AND ACTIVE LABOR ACT

102.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 74 of the First Amended Complaint.

103.

Under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. §1395 dd, a "participating hospital" must provide a medical screening examination to any individual that comes into its emergency room for an "emergency medical condition" in order to determine whether such emergency medical condition exists. If such an "emergency medical condition" does in fact exist, the "participating hospital" must provide sufficient medical examination and/or treatment necessary to stabilize the condition. The express intent of the

-33-

EMTALA is to prohibit hospitals from denying or delaying emergency medical treatment to patients without medical insurance because of their uninsured status.

104.

The Phoebe Putney Defendants are "participating hospitals" as defined in 42 U.S.C. §1395 cc and §1395 dd.

105.

Before the Phoebe Putney Defendants would provide emergency medical screening and/or treatment for "emergency medical conditions" to the Plaintiffs and the Class, they first analyzed their ability to pay for such medical care and required the Plaintiffs and the Class to sign form contracts agreeing to pay the Phoebe Putney Defendants in full for unspecified and undiscounted medical charges. The Phoebe Putney Defendants would not provide emergency medical screening and/or treatment to the Plaintiffs and Class unless they were able to pay for such medical care or until they agreed to sign a form contract guaranteeing payment in full for sum medical care. By conditioning medical screening and/or treatment for "emergency medical conditions" on the Plaintiffs' and the Class' ability to pay and financial guarantees, and refusing to provide emergency medical screening and/or treatment until such guarantees were given, the Phoebe Putney Defendants violated the EMTALA, 42 U.S.C. §1395 dd. Such conduct in failing to provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such medical care is also in violation of 26 U.S.C. §501(c)(30).

106.

Such violations of 42 U.S.C. §1395 dd have proximately caused the Plaintiffs and the Class economic injury and other damages.

## COUNT SEVEN
## UNJUST ENRICHMENT/CONSTRUCTIVE TRUST

107.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 74 of the First Amended Complaint.

108.

The Phoebe Putney Defendants have been unjustly enriched at the Plaintiffs' and the Class' expense. As alleged above, the Phoebe Putney Defendants have failed to provide mutually affordable medical care to the Plaintiffs and the Class despite receiving millions of dollars in federal, state, and local tax exemptions for such purpose. Moreover, contrary to its charitable, nonprofit, tax exempt status, the Phoebe Putney Defendants have failed to utilize its substantial net assets and revenues, valued in the hundreds of millions of dollars, to provide mutually affordable medical care to the Plaintiffs and the Class. The Phoebe Putney Defendants have also realized profits in the millions of dollars by charging the Plaintiffs and the Class the highest and full undiscounted cost for medical care and by charging the Plaintiffs and the Class a higher amount for medical care than their insured patients.

109.

The Plaintiffs and the Class have suffered severe economic injury and other damages as a proximate consequence of the Phoebe Putney Defendants' unjust enrichment.

110.

As a result of the Phoebe Putney Defendants' breach of contract along with their wrongful, unfair, discriminatory, abusive, unconscionable, and noncharitable conduct, they are in possession of tax savings, profits and other assets that they in good conscience and equity

should not be entitled to retain. The Plaintiffs and the Class are therefore entitled to all damages resulting from the Phoebe Putney Defendants' unjust enrichment, including but not limited to, the imposition of a constructive trust in the amount of the Phoebe Putney Defendants' federal, state and local tax exemption savings. The Plaintiffs and the Class are also entitled to the imposition of a constructive trust on all profits the Phoebe Putney Defendants wrongfully obtained by charging the Plaintiffs and the Class the highest and full undiscounted cost of medical care. The Plaintiffs and the Class are further entitled to the imposition of a constructive trust on the difference between the amount the Phoebe Putney Defendants have charged the Plaintiffs and the Class and the amount they have charged their insured patients. Lastly, the Plaintiffs and the Class are entitled to the imposition of a constructive trust on the Phoebe Putney Defendants' net assets and revenues in an amount sufficient to provide to the Plaintiffs and the Class mutually affordable medical care pursuant to its charitable, nonprofit, tax exempt status.

## COUNT EIGHT
## INJUNCTIVE/DECLARATORY RELIEF

111.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 74 of the First Amended Complaint.

112.

As a result of the Phoebe Putney Defendants' wrongful, unfair, discriminatory, and unconscionable charging and collection practices, Plaintiffs and the Class have suffered and, unless abated, will continue to suffer severe and irreparable harm and injury.

113.

Accordingly, Plaintiffs and the Class respectfully request that this Court enter a preliminary and/or permanent injunction, in accordance with FRCP 23(b)(2), ordering the Phoebe Putney Defendants to cease and desist: charging the Plaintiffs and the Class the highest and full undiscounted cost of medical care; charging the Plaintiffs and the Class a higher amount for medical services than its insured patients for the same services; and utilizing aggressive, abusive, and harassing collection practices such as collection lawsuits, liens, and garnishments to collect outstanding grossly inflated medical debt from the Plaintiffs and the Class.

114.

Plaintiffs and the Class also seek a protective Order from the Court, in accordance with FRCP 26(b)(2), requiring the Phoebe Putney Defendants: to provide mutually affordable medical care to the Plaintiffs and the Class; to charge the Plaintiffs and the Class no more for medical services than they charges their insured patients, and to cease its attempts to collect outstanding medical debt from the Plaintiffs and the Class until its has complied with a 180-day waiting period and attempted in good faith to settle such outstanding debt with the Plaintiffs and the Class through a graduated payment plan or other means.

## COUNT NINE
## CIVIL CONSPIRACY/CONCERT OF ACTION

115.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 74 of the First Amended Complaint.

116.

The AHA advised the Phoebe Putney Defendants and other nonprofit hospital members

on its billing and collection practices concerning the uninsured through various internal memos and/or "white papers." In these internal memos, such as the December 17, 2003, memo entitled "Federal Regulations Hamper Hospitals Efforts to Assist Patients of Limited Means," the AHA advised its member nonprofit hospitals, including the Phoebe Putney Defendants, that they were prevented from providing discounts to the Plaintiffs and the Class and were required to subject Plaintiffs and the Class to abusive collection practices. The AHA, through these internal memos, conspired and acted in concert with the Phoebe Putney Defendants to charge the Plaintiffs and the Class inflated rates for medical care and aggressively collect such inflated medical debt through abusive lawsuits, liens and garnishments.

117.

The AHA also falsely justifies to the public and governmental entities the reasoning for the outrageous billing and collection practices employed by the Phoebe Putney Defendants. In a December 16, 2003, letter to the United States Department of Health and Human Services Secretary Tommy Thompson, the AHA, while admitting that the Phoebe Putney Defendants and other nonprofit hospital members of the AHA charge their uninsured patients inflated rates for medical care, falsely represented to the Secretary that the Phoebe Putney Defendants and other member nonprofit hospitals were required by federal and state laws to charge and aggressively collect such grossly inflated medical expenses.

118.

On February 19, 2004, Secretary Thompson exposed the falsity of the AHA's representations, stating that the Medicare regulations have never required nonprofit hospitals to charge their uninsured patients inflated prices for medical care nor prevented such hospitals from offering discounts to its uninsured patients. Moreover, on June 24, 2004, in testimony before the

House of Representatives Energy and Commerce Subcommittee on Oversight and Investigations, the Director of the Center for Medicare and Medicaid Services testified that Medicare billing requirements did not prevent discounting medical care to uninsured patients and did not require aggressive collection efforts toward the uninsured. Similar testimony was provided by the Chief Counsel of the Office of Inspector General of the Department of Health and Human Services, who testified that the federal regulations were clear and that there was no justification for interpreting such regulations as preventing discounts to the uninsured.

119.

Moreover, the AHA actively conspired and acted in concert with the Phoebe Putney Defendants to wrongfully retain its tax exempt status and breach the Phoebe Putney Defendants' contracts with the United States Government, State of Georgia, and other local governmental bodies, the Plaintiffs and the Class by: advising the Phoebe Putney Defendants that they charge and collect undiscounted rates for medical care from the Plaintiffs and the Class; falsely representing to Secretary Thompson that the Phoebe Putney Defendants were required to charge and collect inflated rates for medical care from the Plaintiffs and the Class; and concealing and misrepresenting the true amount of charity care the Phoebe Putney Defendants provided to the Plaintiffs and the Class.

120.

Through such acts, the AHA also conspired and acted in concert with the Phoebe Putney Defendants to violate the Georgia Fair Business Practices Act and Uniform Deceptive Trade Practices Act and to breach the Phoebe Putney Defendants' duty of good faith and fair dealing to the Plaintiffs and the Class.

121.

The AHA's advice, assistance, false justification, concealments and misrepresentations have allowed and enabled the Phoebe Putney Defendants to: fail to provide emergency room medical care to the Plaintiffs and the Class without regard for their ability to pay for such medical care; charge the Plaintiffs and the Class inflated rates for medical care; fail to provide mutually affordable medical care to the Plaintiffs and the Class; charge the Plaintiffs and the Class substantially more than its insured patients for the same medical services; fail to use its net assets and reserves in the hundreds of millions of dollars to provide mutually affordable health care to the Plaintiffs and the Class; and engage in aggressive, abusive, and harassing collection practices such as lawsuits, liens, and garnishments to collect such inflated and unreasonable medical debt from the Plaintiffs and the Class.

122.

Such acts of conspiracy and concert in action by the AHA have proximately caused the Phoebe Putney Defendants to be unjustly enriched at the Plaintiffs' and Class' expense and have also proximately caused the Plaintiffs and the Class economic injury and other damages.

## COUNT TEN
## AIDING AND ABETTING

123.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 74 of the First Amended Complaint.

124.

The AHA, through its internal memos and other advisory assistance, aided and abetted the Phoebe Putney Defendants in charging the Plaintiffs and the Class inflated rates for medical

care and in seeking to collect such grossly inflated medical debt from the Plaintiffs and the Class through abusive collection lawsuits, liens and garnishments.

125.

The AHA aided and abetted the Phoebe Putney Defendants' breach of their tax exempt contracts with the United States Government, State of Georgia, other local governmental bodies, the Plaintiffs and the Class by advising the Phoebe Putney Defendants that federal regulations prevented it from providing discounts to the Plaintiffs and the Class and required it to aggressively collect such grossly inflated medical debt from the Plaintiffs and the Class through collection lawsuits, liens and garnishments.

126.

The AHA also aided and abetted the Phoebe Putney Defendants' breaches of contract by falsely justifying and representing to Secretary Thompson and other government entities that the Medicare regulations prevented the Phoebe Putney Defendants from providing discounts to the Plaintiffs and the Class and required the Phoebe Putney Defendants to aggressively collect such grossly inflated medical debt from the Plaintiffs and the Class through collection lawsuits, liens and garnishments.

127.

The AHA further aided and abetted the Phoebe Putney Defendants' breaches of contract by falsely representing and concealing the true cost of charity care provided by the Phoebe Putney Defendants to the Plaintiffs and the Class.

128.

Through these acts, the AHA also aided and abetted the Phoebe Putney Defendants' violations of the Georgia Fair Business Practices Act and Uniform Deceptive Trade Practices

Act and the Phoebe Putney Defendants' breach of its duty of good faith and fair dealing toward the Plaintiffs and the Class.

129.

The AHA aided and abetted the Phoebe Putney Defendants' violations of the Fair Debt Collections Practices Act as described in this First Amended Complaint.

130.

The AHA aided and abetted the Phoebe Putney Defendants' violations of 42 U.S.C. § 1983, and the Plaintiffs' and Class' constitutional rights under the Fourteenth Amendment of the United States Constitution, and the Fifth Amendment of the United States Constitution.

131.

Such substantial assistance by the AHA allowed and enabled the Phoebe Putney Defendants to: fail to provide emergency room medical care to the Plaintiffs and the Class without regard for their ability to pay for such medical care; charge the Plaintiffs and the Class inflated rates for medical care; fail to provide mutually affordable medical care to the Plaintiffs and the Class; charge the Plaintiffs and the Class substantially more than its insured patients for the same medical services; fail to use its net assets and revenues in the hundreds of millions of dollars to provide mutually affordable health care to the Plaintiffs and the Class; and engage in aggressive, abusive, and harassing collection practices such as lawsuits, liens, and garnishments to collect such inflated and unreasonable medical debt from the Plaintiffs and the Class.

132.

The AHA's substantial assistance has proximately caused the Phoebe Putney Defendants to be unjustly enriched at the Plaintiffs' and Class' expense and has also proximately caused the Plaintiffs and the Class economic injury and other damages.

-42-

133.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 74 of the First Amended Complaint.

134.

Plaintiffs and the Class were and are pursued for debts allegedly owed to the Phoebe Putney Defendants. Such debts are covered by 15 U.S.C. §1692a(5).

135.

Under the Fair Debt Collection Practices Act, a "debt collector may not use any false, deceptive or misleading representation or means in connection with the collection of a debt."

136.

The Phoebe Putney Defendants have required uninsured patients to guarantee payment of unspecified charges as a condition of treatment. The Phoebe Putney Defendants then charged inflated, excessive, and discriminatory rates to uninsured patients and aggressively attempted to collect such rates despite the Defendants' obligations as "nonprofit" and "charitable" institutions.

137.

At the expense of uninsured patients, the Phoebe Putney Defendants have overcharged uninsured patients to distort the amount of "charity" care they provide to their uninsured patients. The Phoebe Putney Defendants report the amount of "charity" care they provided as the amount of gross charges[1] (i.e., the sticker price) – which are greatly inflated – rather than the cost of

---

[1] Gross charges represent the hospital's "list price" for products and services and are a key variable in determining actual reimbursement from a number of payers, including Medicare, Medicaid, HMO, contractual agreements and Worker Compensation programs.

actually providing the service. By charging inflated rates for "charity" care, the Phoebe Putney Defendants are able to receive larger state and federal subsidies.

138.

The Phoebe Putney Defendants have inflated charges for patients without insurance for the purpose of boosting subsidies received from federal and state governments. Higher charges for the uninsured have led to higher reimbursements to the Phoebe Putney Defendants from the federal and state governments.

139.

At the expense of uninsured patients, the Phoebe Putney Defendants have been deceptively "gaming" and manipulating the system to maximize payments under federal and state medical funding programs.

140.

The Phoebe Putney Defendants' conduct is an unconscionable, discriminating, misleading, and deceptive creation and collection of inflated debts from uninsured patients.

141.

Through their actions and inactions, the Defendants have violated the Fair Debt Collections Practices Act. Plaintiffs and the Class have suffered damages as a result of the Phoebe Putney Defendants' violative collection practices.

### COUNT TWELVE
### VIOLATIONS OF 42 U.S.C. § 1983 AND THE FOURTEENTH AMENDMENT AND VIOLATIONS OF THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION

142.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 74 of the First Amended Complaint.

143.

As voluntary participants in the Medicaid program, participating hospitals such as the Phoebe Putney Defendants are obligated to comply with the requirements of the Medicaid Act and corresponding regulations. Medicaid is a cooperative federal and state program designed to finance health care services for the indigent. It was established by Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.* ("Medicaid Act"), and is administered in Georgia by the Department of Community Health, *see* O.C.G.A. § 49-4-142(a).

144.

As voluntary participants in the Medicare program, participating hospitals such as the Phoebe Putney Defendants are required to comply with Medicare's laws and regulations.

145.

Medicare and Medicaid provide billions of dollars in funding for "uncompensated" care. The primary source of funding for "uncompensated" care is government dollars. The projected federal, state and local spending available to pay for the care of the uninsured in 2004 is 34.6 billion dollars.

146.

Disportionate Share Hospital (DSH) payments are payments in the Medicaid and Medicare programs that, along with local tax appropriations, help hospitals finance care to low-income and uninsured patients.

147.

Medicare DSH payments total billions of dollars annually.

148.

Hospitals qualify for Medicare DSH based on their "disproportionate share patient percentage," which is a proxy for how much care hospitals provide to low-income patients. The amount of Medicare DSH that hospitals receive is generally based on their disportionate share patient percentage, their status as an urban or rural provider, and their bed size. There are sixteen different categories of hospitals for DSH payments with formulae for calculating DSH payments as percent add-ons to Medicare DRG rates.

149.

Medicaid DSH payments also total billions of dollars annually. Medicaid DSH payments grew out of federal legislation in 1981 that required state Medicaid agencies to make allowances when determining reimbursement rates for hospitals that serve a disproportionate number of Medicaid or low-income patients.

150.

The Georgia General Assembly created the Indigent Care Trust Fund ("ICTF") in 1990, which serves as the conduit for funds between the federal DSH Program and Georgia hospitals. The Georgia Department of Community Health's (DCH) Division of Medical Assistance administers the ICTF.

151.

The purpose of the federal Disproportionate Share Hospital (DSH) Program and Georgia's ICTS is to provide compensation to qualifying hospitals for services provided without charge or for a reduced charge to medically indigent patients.

### 152.

In addition to enjoying the benefits of federal, state and local tax exempt status, the

Phoebe Putney Defendants have received charity care subsidies from the State of Georgia's

Indigent Care Trust Fund. Such funds were distributed to eligible hospitals based on a formula

that takes into account documented charity care, the hospital's profitability, and the portion of its

revenue that comes from private payers.

### 153.

Under Medicare and Medicaid federal and state programs, the Phoebe Putney Defendants

claim that federal and state laws compelled them to charge inflated undiscounted rates to

uninsured patients.

### 154.

For example, the AHA's publication "Federal Regulations Hamper Hospitals' Efforts to

Assist Patients of Limited Means" contains the following statements blaming federal and state

legal requirements for the Phoebe Putney Defendants' and other nonprofit hospitals' practice of

overcharging patients without insurance.

- The difficulties created by the Medicare billing rules are related to the practical requirement that each hospital maintain a uniform charge structure that applies to all patients. In other words, each patient must be charged the same amount for identical services. Such uniformity remains crucial to determining payments for some hospitals, such as critical access hospitals, and also to the submission of accurate cost reports for all hospitals.

- [F]ederal and state antikickback laws also contribute to the regulatory confusion. Those laws prohibit hospitals from offering inducements to patients.

- [H]ospitals must levy uniform charges for all patients to ensure compliance with Medicare cost report requirements.

- Because of the Medicare rules described above and the lengths to which CMS has gone to enforce the rules, hospitals continue to believe that the Medicare cost

reporting rules require them, in practice, to develop and maintain uniform charges for all patients.

- State and federal antikickback laws also create incentives for hospitals to aggressively seek repayment from uninsured patients of limited means.

155.

The Phoebe Putney Defendants claim that they charged uninsured patients the rates which are allegedly required by federal and state statutes and regulations.

156.

In determining the rates charged to uninsured patients, the Phoebe Putney Defendants have allegedly acted pursuant to contracts with the federal and state governments.

157.

The Phoebe Putney Defendants operate under and pursuant to an agreement with a state-created hospital authority.

158.

The Phoebe Putney Defendants have acted under color of federal and state law and deprived Plaintiffs of rights secured by the Constitution and laws of the United States.

159.

The constitutional deprivations committed by the Phoebe Putney Defendants resulted from the Phoebe Putney Defendants' exercise of rights allegedly based in federal and state authority.

160.

The Phoebe Putney Defendants extensively rely upon government assistance and benefits. The Defendants implement the federal and state government functions embodied in the

Medicare and Medicaid programs and other government programs addressing public access to essential medical care.

161.

The Phoebe Putney Defendants have overcharged uninsured patients and collected or attempted to collect such overcharges with the assistance of state procedures and laws. The Phoebe Putney Defendants have used and abused state law and procedures to enforce their discriminating charging system against their uninsured patients.

162.

The Phoebe Putney Defendants' billing and collection practices with uninsured patients have a disparate impact on racial minorities who are disproportionately represented among the uninsured population.

163.

The Phoebe Putney Defendants' conduct has violated 42 U.S.C. § 1983 and the constitutional rights of the Plaintiffs and the Class under the Fourteenth Amendment of the United States Constitution.

164.

The Phoebe Putney Defendants' conduct has also violated the constitutional rights of the Plaintiffs and the Class under the Fifth Amendment of the United States Constitution. The equal protection component of the Fifth Amendment confers on Plaintiffs and the Class federal constitutional rights. Under color of federal law, the Phoebe Putney Defendants have violated those rights through their discriminatory excessive overcharges to uninsured patients.

165.

Under color of federal and state law, the Phoebe Putney Defendants' conduct has violated the Plaintiffs' and Class' constitutional rights to equal protection of the laws and caused economic injuries to the Plaintiffs.

166.

Based on alleged federal and state law requirements, the Phoebe Putney Defendants have overcharged uninsured patients and then used state collection laws to obtain judgments and garnish patients' wages or seize bank accounts.

167.

The Phoebe Putney Defendants have used federal and state laws and regulations for improper motives and improper purposes described in this First Amended Complaint.

168.

The Phoebe Putney Defendants have engaged in invidious discrimination against uninsured patients. The Phoebe Putney Defendants have directly or indirectly placed obstacles in the way of citizens trying to obtain health care. Charging uninsureds considerably more for their health care than insured patients results in a demoralizing relative barrier for obtaining care. Uninsureds who have gone to the hospital for treatment only to face inflated disparate charges and endure subsequent harassing collections efforts, judgments, and property liens are discouraged from returning to hospitals for needed care. Even uninsureds who have never gone to such hospitals but who are aware of the exorbitant bills associated with medical care are discouraged from obtaining reasonable care in the first place.

169.

The end results of uninsured status, discriminatory price gouging, and aggressive collection efforts are well-documented. A recent National Academy of Science's Institute of Medicine Report, entitled Coverage Matters: Insurance and Health Care (2001), details how uninsured patients obtain less medical care, have higher rates of infant mortality, and die at earlier ages. Placing pricing obstacles in between uninsureds and necessary medical care jeopardizes the fundamental values of life, liberty and property. Even for those who never pay their bills, life and liberty are impinged by the barriers to healthcare erected by the disparate hospital billing practices.

170.

Charging the uninsured multiple times what insured patients and Medicare patients are charged is arbitrary and bears no relationship to the actual cost of such care. The pricing scheme does not further a legitimate "government interest."

171.

Furthermore, aside from not promoting a legitimate government interest, the widely disparate pricing system actually serves to frustrate government goals. Specifically, when viewed in context, the disparate pricing scheme is antithetical to the government interest of promoting health and increasing access to medical care. Government funding – through Medicare, Medicaid, Disproportionate Share Hospital reimbursements and tax exemptions – is aimed at improving societal health generally and, in particular, encouraging access for indigent and uninsured patients.

172.

By overcharging uninsured, fewer uninsured patients are able to pay their bills and more of them become dissuaded (directly and indirectly) by their hospitals from seeking further care.

173.

Study after study has shown that the net effect of uninsurance and the associated medical care avoidance undermines public health, preventative medicine, and the control of both acute and chronic diseases. The inarguable result is the spread of communicable diseases and the unchecked progression of chronic ones. The end points are premature death, unnecessary suffering, and, when a particular uninsured becomes poor enough or disabled enough to qualify for Medicaid or old enough to qualify for Medicare, a greatly inflated cost to society at large.

174.

The Phoebe Putney Defendants' violations of Plaintiffs' and the Class' rights under 42 U.S.C. § 1983, the Fourteenth Amendment, and the Fifth Amendment of the U.S. Constitution have caused economic injuries to the Plaintiffs and the Class.

## IX.
## DAMAGES

175.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 174 of the First Amended Complaint.

176.

As a direct and proximate result of the Phoebe Putney Defendants' breaches of contracts, breaches of duty of good faith and fair dealing, violations of the Georgia Fair Business Practices Act and Uniform Deceptive Trade Practices Act, violations of EMTALA, breaches of charitable trust, unjust enrichment, violations of the Fair Debt Collections Practice Act, violations of 42

-52-

U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution, and violations of the Fifth Amendment of the United States Constitution, and the AHA's actions in conspiring with and aiding and abetting such breaches and violations, the Plaintiffs and the Class have suffered economic injury and damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs requests that upon a trial of this action, judgment will be entered against the Defendants for:

1) all economic, monetary, actual, consequential, and compensatory damages caused by the Defendants' conduct;

2) a constructive trust to be imposed on: the Phoebe Putney Defendants' federal, state and local tax exempt savings; the Phoebe Putney Defendants' profits obtained from charging the Plaintiffs and the Class the highest and full undiscounted cost for medical care; and the Phoebe Putney Defendants' net assets and revenues in an amount sufficient to provide the Plaintiffs and the class mutually affordable medical care; and

3) injunctive and/or declaratory relief.

**Jury trial requested.**

Respectfully submitted, this the 26th day of July, 2004.


VROON & CRONGEYER, LLP

BY: _____
Bryan A. Vroon
Georgia Bar No. 729086


-53-

BY: _____

      John W. Crongeyer
      Georgia Bar No. 197267

1230 Peachtree Street, Suite 2450
Atlanta, Georgia 30309
Telephone: (404) 607-6710
Facsimile: (404) 607-6711


Don Barrett, Esq.
Barrett Law Office
404 Court Square North
P.O. Box 987
Lexington, Mississippi 39095
(662) 834-2376

(Petition for Admission to Plead and Practice Pro Hac Vice Has Been Filed)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA

DEBORAH GAIL ELLIS ,VIRGINIA )
FRANKLIN, BOBBY LEON MIXON, and )
JENETTE MIXON, On Behalf of Themselves )
and All Others Similarly Situated, )
　　　　　　　　　　　　　　　　　　 )　Civil Action No.: 1:04-CV-80-3-WLS
　　　Plaintiffs )
　　　　　　　　　　　　　　　　　　 )
vs. )
　　　　　　　　　　　　　　　　　　 )
PHOEBE PUTNEY HEALTH SYSTEMS, )
INC.;PHOEBE PUTNEY MEMORIAL )
HOSPITAL, INC.; AMERICAN HOSPITAL )
ASSOCIATION, and JOHN DOES 1 )
THROUGH 10. )
　　　　　　　　　　　　　　　　　　 )
　　　Defendants. )
_____)

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the within and foregoing **First**

**Amended Complaint** by depositing a true and correct copy of same in the United States Mail,

postage prepaid, addressed as follows:

　　　　C. Richard Langley, Esq.
　　　　William W. Calhoun, Esq.
　　　　Langley & Lee, LLC
　　　　323 Pine Avenue, Suite 300
　　　　Albany, Georgia  31702

This _2/5/_day of July, 2004.

　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　Bryan A. Vroon